IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RASUL ROE, *et al.*,<br><br>       Plaintiffs,<br><br>v.<br><br>ALEJANDRO N. MAYORKAS, *et al.*,<br><br>       Defendants. | No. 1:22-cv-10808-MLW |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION TO COMPEL EXPEDITED
PRODUCTION OF THE ADMINISTRATIVE RECORD**

Plaintiffs include a group of Afghan nationals who have sought humanitarian parole to escape the threat of serious bodily harm at the hands of the Taliban. Plaintiffs allege that Defendants' handling of their humanitarian parole applications violates the Administrative Procedure Act, including actions that (1) are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) fail to comply with agency rules and policy; (3) violate notice-and-comment requirements; and (4) unlawfully withhold or delay agency action.

In order to promote the timely resolution of their claims, Plaintiffs request that this Court compel the expedited production of the Administrative Record by no later than June 24, 2022.[1]

---

[1] In light of the serious confidentiality concerns and related safety risk to Plaintiffs at issue in this case, Plaintiffs request that the Court order production of the administrative record to Plaintiffs directly and in a secure manner, without filing the administrative record on the docket. This would allow the parties to cite and provide to this Court any relevant excerpts from the administrative record, while seeking leave to file certain materials under seal and making appropriate redactions for the public record.

1

## **LEGAL STANDARD**

When evaluating claims that an agency has violated the APA, "the task of the reviewing court is to apply the appropriate . . . standard of review . . . to the agency decision based on the record the agency presents to the reviewing court." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *Cousins v. Secretary of United States DOT*, 880 F.2d 603, 610 (1st Cir. 1989) ("APA review typically takes place on the basis of a record compiled by the agency in making the challenged decision."); 5 U.S.C. § 706 ("[T]he court shall review the whole record or those parts of it cited by a party."). To facilitate swift resolution of claims under the APA, reviewing courts have the power to compel government defendants to produce the administrative record on an expedited basis. *See, e.g.*, *Saleh v. Pompeo*, 393 F. Supp. 3d 172, 181 (E.D.N.Y. 2019) (ordering expedited production of administrative record); *Nat'l Ass'n of Mortg. Brokers v. Bd. of Governors of the Fed. Reserve Sys.*, 770 F. Supp. 2d 283, 289 (D.D.C. 2011) (same).

District court judges have "broad discretion . . . to manage scheduling" according to the needs of a case. *Williams v. Monarch Mach. Tool Co.*, 26 F.3d 228, 230 (1st Cir. 1994). In the context of discovery, this Court stated that "[t]o obtain expedited discovery, a party must show good cause," which "exists if the request . . . is 'reasonable[] . . . in light of all of the surrounding circumstances.'" *Calderon Jimenez v. Nielsen*, 326 F.R.D. 357, 361 (D. Mass. 2018) (Wolf, J.) (quoting *Momenta Pharms., Inc. v. Teva Pharms. Indus. Ltd.*, 765 F. Supp. 2d 87, 88 (D. Mass. 2011)). Relevant considerations can include "the purpose for the discovery, the ability of the discovery to preclude demonstrated irreparable harm, the plaintiff's likelihood of success on the merits, the burden of discovery on the defendant, and the degree of prematurity." *Id.* (citation omitted); *see also KPM Analytics N. Am. v. Blue Sun Scientific, LLC*, 540 F. Supp. 3d 145, 146 (D. Mass. 2021) ("The First Circuit has not articulated what constitutes good cause for expedited

discovery, but multiple courts in this session have adopted the reasonableness standard from [*Momenta Pharms*].").

## ARGUMENT

Given Plaintiffs' unique and dire circumstances, ample good cause exists for the expedited production of the administrative record, in order to advance this litigation in a timely manner. Early disclosure of these materials is reasonable under the circumstances, as Plaintiffs' claims involve matters of life and death, and their interest in prompt adjudication far outweighs any marginal increase in the administrative burden on Defendants.

The "complete administrative record" includes "all documents and materials directly or indirectly considered by agency decision-makers." *Inst. for Fisheries Res. v. Burwell*, No. 16-CV-01574-VC, 2017 WL 89003, at *1 (N.D. Cal. Jan. 10, 2017) (quoting *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989)). Here, the complete administrative record includes at least documents related to each individual Plaintiff's humanitarian parole application, as well as the administrative record(s) pertaining to (1) the agency's change in the standard applied to the applications of the Plaintiffs and others similarly situated, including materials reflecting the consideration or adoption of policies regarding USCIS's treatment of humanitarian parole applications filed by Afghan nationals since August of 2021; (2) the agency's decisions with regard to the policies for issuing Requests for Evidence, Notices of Intent to Deny, and Denials; and (3) the timing of adjudications of Afghan humanitarian parole applications, including the decisions to stop adjudicating the applications and to deprioritize cases. "It is obvious that in many cases," including this one, that the "universe of materials" to be included in the administrative record includes "internal comments, draft reports, inter- or intra-agency emails, revisions, memoranda, [and] meeting notes [that] inform an agency's" decision-making. *Id.*

For at least the following reasons, good cause supports the prompt production of these materials in this case.

First, expedited production of the administrative record is warranted in order to help Plaintiffs avoid succumbing to a significant threat of irreparable harm. *See Calderon Jimenez*, 326 F.R.D. at 361-62 (concluding that threat of irreparable harm supported expediting discovery). As set forth in detail in the Complaint, Plaintiffs fear for their lives and face grave danger. *See, e.g.*, Complaint ¶¶ 84, 114, 123, 146, 158, 175. That is why they pursued humanitarian parole, which is specifically intended for individuals presenting "urgent humanitarian reasons." *See* 8 U.S.C. § 1182(d)(5)(A). While they await the litigation of their claims, Plaintiffs continue to live their lives in hiding and/or in fear of being deported to Afghanistan. *See id.* ¶ 5. The dangers they face have already come to pass for Rasul Roe and his family, who faced a brutal and deadly attack. *See id.* ¶¶ 95-96.

The life-or-death issues in this litigation warrant expedited production of the administrative record so that the parties can present their arguments to this Court for adjudication as quickly as possible, whether through a motion for preliminary injunction or an accelerated schedule for briefing dispositive motions. *See Wilson v. Grp. Hospitalization & Med. Servs., Inc.*, 791 F. Supp. 309, 314 (D.D.C. 1992) (observing that death is the "ultimate irreparable injury"). Indeed, courts frequently hold that, where feasible, preliminary injunction motions should be based on the administrative record.[2] And when adjudicating dispositive motions seeking final relief, Plaintiffs

---

[2] *See, e.g.*, *E. Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094, 1107 (N.D. Cal. 2018) ("[T]o the extent practicable, a court should determine a plaintiff's likelihood of success on the merits of such a challenge based on the administrative record."); *Nat'l Ass'n of Mortg. Brokers.* 770 F. Supp. 2d at 288-89 (granting motion to expedite production of the administrative record "in order to develop the factual record for consideration in connection with [plaintiff's] motion for a preliminary injunction and to further demonstrate that [plaintiff] is likely to succeed on the merits")

must have access to "the whole record." 5 U.S.C. § 706.

Without the expedited production of this record, Plaintiffs could be forced to move for a preliminary injunction in order to have a hope of obtaining timely relief, and to litigate that motion without the proper benefit of records and information that exist exclusively within Defendants' custody and control. Thus, absent expeditious production of the administrative record, Plaintiffs' ability to demonstrate that they are entitled to the time-sensitive preliminary injunctive relief that they desperately need might be hampered. By contrast, expedited production of the administrative record would allow Plaintiffs to move for a preliminary injunction or for final relief with access to information that Defendants already have—and the same record that the Court will ultimately need to determine the merits of the case. *See Calderon Jimenez*, 326 F.R.D. at 362 ("[T]he limited . . . discovery being ordered is appropriate to allow the court . . . to proceed as promptly as possible to the motion[] for a preliminary injunction[.]").

Second, ordering production of the administrative record on an expedited basis would not unduly burden Defendants. Defendants in this case are obligated to produce the administrative record anyway. *See* 5 U.S.C. § 706 (describing record for court's review). Thus, when evaluating any burden on Defendants from preparing the administrative record, the Court's analysis focuses only on the *marginal* increase in burden from preparing the record more promptly as compared with the agency's speed in preparing it in less exigent circumstances. Here, any marginally increased burden on Defendants does not outweigh the serious threats faced by Plaintiffs in this case.[3]

---

[3] Defendants are presently considering Plaintiffs' proposed terms for the disclosure of the Plaintiffs' names and identifying information. *See generally* ECF No. 4 at 13 (contemplating that Plaintiffs' names would be provided to the government pursuant to a mutually-agreeable protective order or other agreed-to confidential basis).

Plaintiffs' proposed schedule would still give defendants until June 24 to produce the record—approximately one month from the date that Plaintiffs filed their complaint and three weeks from the date of this motion.[4] Even if the Court did not adopt the precise date suggested by the Plaintiffs, the circumstances demonstrate ample good cause to require Defendants to produce the administrative record far more quickly in this life-or-death litigation involving threats from the Taliban than in other APA cases not involving these stakes.[5]

For these reasons, "[g]ood cause exists" to order Defendants to produce the administrative record on an expedited basis, by June 24. *Calderon Jimenez*, 326 F.R.D. at 361. Plaintiffs' "request for expedited discovery is 'reasonable[] . . . in light of all of the surrounding circumstances' including 'the purpose for the discovery, the ability of the discovery to preclude demonstrated irreparable harm,'" and the marginal "'burden . . . on the defendant.'" *See id*. (citation omitted).

## CONCLUSION

Plaintiffs respectfully request that this Court grant their Motion for to Compel Expedited Production of the Administrative Record and order Defendants to furnish Plaintiffs with the complete, certified administrative record by June 24.[6]

---

[4] It will also be four weeks after Plaintiffs first informed Defendants' counsel that they would seek expedited production of the administrative record, on May 27, 2022.

[5] "[P]rematurity" and "likelihood of success" considerations also weigh in Plaintiffs' favor. *See Calderon Jimenez*, 326 F.R.D. at 361. Plaintiffs merely seek to expedite the government's already existing obligation to produce the record in an APA case. And based on the information currently available to them, Plaintiffs have made detailed and plausible allegations that USCIS impermissibly violated existing rules and changed its standards for adjudicating Afghan humanitarian parole applications arbitrarily, *see FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009), in violation of binding agency policy, *see Wilkinson v. Legal Servs. Corp.*, 27 F. Supp. 2d 32, 34 n.3, 60-61 (D.D.C. 1998), and without following required procedure, *see N.H. Hosp. Ass'n v. Azar*, 887 F.3d 69, 70-71 (1st Cir. 2018), while also unreasonably withholding and delaying action on those applications, *see* 5 U.S.C. § 706(1).

[6] Plaintiffs also respectfully suggest that a status conference may be useful to guide the parties in ensuring the efficient litigation of this matter.

Dated: June 3, 2022

Respectfully submitted,

PLAINTIFFS

By their attorneys,

/s/ *Susan M. Finegan*
Susan M. Finegan (BBO #559156)
Susan J. Cohen (BBO #553353)
John F. Quill (BBO #632216, *pro hac vice*)
Andrew H. DeVoogd (BBO #670203)
Andrew N. Nathanson (BBO #548684)
Kenneth P. Monroe (BBO #696381)
Michael P. Molstad (BBO #707524)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND
 POPEO, P.C.
One Financial Center
Boston, MA 02111
617.542.6000
SMFinegan@mintz.com

Matthew R. Segal (BBO #654489)
Adriana Lafaille (BBO #680210)
Areeba Jibril (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza, Suite 850
Boston, MA 02108
617.482.3170
ALafaille@aclum.org