## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RASUL ROE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ALEJANDRO N. MAYORKAS, *et al.*, <br><br> Defendants. | No. 1:22-cv-10808-ADB |

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR RENEWED MOTION TO COMPEL EXPEDITED PRODUCTION OF THE ADMINISTRATIVE RECORD

In the five months since Plaintiffs first moved to compel an expedited administrative record, they have continued to endure each day in the dangerous and difficult conditions that led them to file that motion. Endeavoring to facilitate an efficient resolution of this case, Plaintiffs have repeatedly tried to confer in good faith with Defendants regarding the scope and timing of the administrative record that will be submitted if the pending motion to dismiss is denied. Defendants refuse even to discuss the issue. Plaintiffs respectfully request this Court's intervention to ensure that a full administrative record is prepared to be filed within a short time of any decision denying the pending motion to dismiss in whole or in part.

Without judicial intervention, there is reason to be concerned that the administrative record will be both incomplete and untimely. With regard to scope, while Plaintiffs allege—and possess evidence—that the government silently changed its qualifications for Afghan humanitarian parole applications in the fall of 2021, counsel for the government has denied that this change even occurred. That denial raises significant concerns about whether *any* efforts are being made to compile an administrative record surrounding this change. With regard to timing, Defendants

recently indicated that they anticipate stretching out the administrative record over a "rolling production schedule," apparently to begin only after required by this Court. Given Defendants' refusals to meet and confer about these concerns, Plaintiffs specifically request that this Court order Defendants to produce the *complete*, certified Administrative Record by no later than two weeks from the date of any order denying in whole or in part Defendants' July 11 motion to dismiss.[1] Plaintiffs also request that this Court require the government, in the interim, to provide an update to the Court regarding its progress towards compiling the administrative record, including an index and description of the materials that they have compiled to date, and an explanation of the scope of the material yet to be compiled. By providing a means to identify and resolve disputes regarding the timing and scope of the administrative record now, and requiring Defendants to promptly produce the administrative record within a set period after any decision denying their motion to dismiss, this Court will promote justice, efficiency, and the speedy resolution of Plaintiffs' time-sensitive claims.

## BACKGROUND

Plaintiffs include a group of Afghan nationals who have sought humanitarian parole to escape the threat of serious bodily harm at the hands of the Taliban. Plaintiffs allege that Defendants' handling of their humanitarian parole applications violates the Administrative Procedure Act, including because Defendants impermissibly adopted new standards for adjudicating their applications, failed to comply with agency rules and policy, violated notice-and-

---

[1] In light of the serious confidentiality concerns and related ongoing safety risks to Plaintiffs at issue in this case, Plaintiffs request that the Court order production of the administrative record to Plaintiffs directly and in a secure manner, without filing the administrative record on the docket. This approach would facilitate Defendants' expedited production. It would allow the parties to cite and provide to this Court any relevant excerpts from the administrative record, while seeking leave to file certain materials under seal and making appropriate redactions for the public record.

comment requirements, and unlawfully withheld or delayed agency action.

More than a year ago, Plaintiffs filed their applications for urgent humanitarian relief at issue in this litigation. Nearly half a year ago, on May 25, 2022, Plaintiffs filed their complaint in this Court. Dkt. 1. The next week, on June 3, Plaintiffs filed a Motion to Compel Expedited Production of the Administrative Record by June 24, 2022 in order to promote the timely resolution of their claims. Dkt. 25. In their supporting memorandum of law, Plaintiffs plainly described the scope and contents of an administrative record that would be commensurate with the substantive allegations in the complaint. Dkt. 26 at 3. The court declined to rule on the motion to expedite production at that time, and Defendants never filed a response.

Addressing the administrative record during a July 7, 2022 telephonic status conference, this Court indicated its desire "to keep the case moving in case [Defendants are] wrong" on the motion to dismiss, and "cautioned" government counsel that "you're going to be on a very short string in terms of production." July 7 Tr. at 7:7, 7:20–21, 12:10. The Court instructed Defendants not to leave the compilation of the record for later, adding that—if the motion to dismiss is denied—the Court is "going to order the production fairly quickly." *Id.* at 7:7, 7:23–24. The Court elaborated that it "hoped [Defendants] keep . . . in mind" their "short string" and specifically "encourag[ed] them to produce [individual] files in parallel" with the Court's consideration of the motion to dismiss. *Id.* at 9:20–21, 12:11–12. Asked about the possibility of a rolling production while the motion was pending, counsel for Defendants indicated that it would be appropriate to "confer with plaintiff's counsel." *Id.* at 7:8–17.

On July 11, Defendants moved to dismiss. Dkt. 40. The parties completed expedited briefing on that motion on July 25, Dkt. 44, 45, and this Court held oral argument on August 2, Dkt. 46. Government counsel's central contention at the hearing was that, contrary to Plaintiffs'

allegations, "there has been no policy change." Aug. 2 Tr. at 6:14–15. With regard to the administrative record, Defendants represented that "[t]he government is diligently compiling the administrative records . . . expeditiously." Aug. 2 Tr. at 33:16–34:1. The motion remains pending.

Since oral argument, counsel for Plaintiffs requested on four separate occasions (August 24, September 1, October 21, and October 31) to confer with counsel for Defendants regarding the scope and timing of the administrative record. On each occasion, counsel for Defendants refused. Instead, counsel has stated that the government "continues to expedite the production of its administrative record," but that "meeting and conferring about plaintiffs' potential grounds for dissatisfaction with yet-to-be-produced record(s) is premature." Ex. 1, E-Mail from D. Byerley, Defs.' Counsel, to A. DeVoogd, Pls.' Counsel (Oct. 27, 1:37 P.M. ET and Oct. 31 4:38 P.M. ET, 2022). Counsel have offered only that, "[i]f the Court determines that an administrative record(s) is necessary, we'll be happy to engage with you then on a rolling production schedule." *Id.* (Oct. 27, 2022 1:37 P.M. ET).

## **LEGAL STANDARD**

When evaluating claims that an agency has violated the APA, "the task of the reviewing court is to apply the appropriate . . . standard of review . . . to the agency decision based on the record the agency presents to the reviewing court." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985); *Cousins v. Secretary of United States DOT*, 880 F.2d 603, 610 (1st Cir. 1989) ("APA review typically takes place on the basis of a record compiled by the agency in making the challenged decision."); 5 U.S.C. § 706 ("[T]he court shall review the whole record or those parts of it cited by a party."). To facilitate swift resolution of claims under the APA, reviewing courts have the power to compel government defendants to produce the administrative record on an expedited basis. *See, e.g.*, *Saleh v. Pompeo*, 393 F. Supp. 3d 172, 181 (E.D.N.Y. 2019) (ordering

expedited production of administrative record); *Nat'l Ass'n of Mortg. Brokers v. Bd. of Governors of the Fed. Reserve Sys.*, 770 F. Supp. 2d 283, 289 (D.D.C. 2011) (same). Indeed, "the relevant inquiry" in APA cases in this circuit is "whether the administrative record sufficiently supports the agency's decision." *Atieh v. Riordon*, 727 F.3d 73, 76-77 (1st Cir. 2013); *see* Aug. 2 Tr. at 16:21, 32:1–2 (this Court noting same).

District court judges have "broad discretion . . . to manage scheduling" according to the needs of a case. *Williams v. Monarch Mach. Tool Co.*, 26 F.3d 228, 230 (1st Cir. 1994). "To obtain expedited discovery, a party must show good cause," which "exists if the request . . . is 'reasonable[] . . . in light of all of the surrounding circumstances.'" *Calderon Jimenez v. Nielsen*, 326 F.R.D. 357, 361 (D. Mass. 2018) (quoting *Momenta Pharms., Inc. v. Teva Pharms. Indus. Ltd.*, 765 F. Supp. 2d 87, 88 (D. Mass. 2011)). Relevant considerations can include "the purpose for the discovery, the ability of the discovery to preclude demonstrated irreparable harm, the plaintiff's likelihood of success on the merits, [and] the burden of discovery on the defendant." *Id.* (citation omitted); *see also KPM Analytics N. Am. v. Blue Sun Scientific, LLC*, 540 F. Supp. 3d 145, 146 (D. Mass. 2021) ("The First Circuit has not articulated what constitutes good cause for expedited discovery, but multiple courts in this session have adopted the reasonableness standard from [*Momenta Pharms*].").

**ARGUMENT**

This Court should grant Plaintiffs' renewed motion for the expedited production of the administrative record in order to advance this litigation in a timely manner. Given Plaintiffs' unique and dire circumstances, the ample good cause that existed when they first moved for expedited production of the administrative record five months ago has only grown significantly. Plaintiffs' claims involve matters of life and death, and their interest in prompt adjudication far

outweighs any administrative burden on Defendants, who have already enjoyed nearly half a year to compile the administrative record. Requiring Defendants to producing the record within a set period following this Court's decision on the motion to dismiss—and requiring an interim status update that will shed light on any disputes regarding the scope of the administrative record—is reasonable in these circumstances.

The "complete administrative record" includes "all documents and materials directly or indirectly considered by agency decision-makers." *Inst. for Fisheries Res. v. Burwell*, No. 16-CV-01574-VC, 2017 WL 89003, at *1 (N.D. Cal. Jan. 10, 2017) (quoting *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989)). Here, the complete administrative record includes at least documents related to each individual Plaintiff's humanitarian parole application. As Plaintiffs previously articulated in light of the allegations in the complaint, the administrative record(s) also include those pertaining to (1) the agency's change in the standard applied to the applications of the Plaintiffs and others similarly situated, including materials reflecting the consideration or adoption of policies regarding USCIS's treatment of humanitarian parole applications filed by Afghan nationals since August of 2021; (2) the agency's decisions with regard to the policies for issuing Requests for Evidence, Notices of Intent to Deny, and Denials; and (3) the timing of adjudications of Afghan humanitarian parole applications, including the decisions to stop adjudicating the applications and to deprioritize cases. "It is obvious that in many cases," including this one, that the "universe of materials" to be included in the administrative record includes "internal comments, draft reports, inter- or intra-agency emails, revisions, memoranda, [and] meeting notes [that] inform an agency's" decision-making. *Id.*

For at least the following reasons, good cause supports the prompt production of these materials in this case by two weeks from the date this Court rules on the motion to dismiss.

First, expedited production of the administrative record is warranted in order to help Plaintiffs avoid succumbing to a significant threat of irreparable harm. *See Calderon Jimenez*, 326 F.R.D. at 361-62 (concluding that threat of irreparable harm supported expediting discovery). As set forth in detail in the Complaint, Plaintiffs fear for their lives and face grave danger. *See, e.g.*, Complaint ¶¶ 84, 114, 123, 146, 158, 175. That is why they pursued humanitarian parole, which is specifically intended for individuals presenting "urgent humanitarian reasons." *See* 8 U.S.C. § 1182(d)(5)(A). While they await the litigation of their claims, Plaintiffs continue to live their lives in hiding and/or in fear of being deported to Afghanistan. *See id.* ¶ 5. The dangers they face have already come to pass for Rasul Roe and his family, who faced a brutal and deadly attack. *See id.* ¶¶ 95-96.

The life-or-death issues in this litigation warrant expedited production of the administrative record so that the parties can present their record-based merits motions to this Court for adjudication as quickly as possible, whether through a motion for preliminary injunction or an accelerated schedule for briefing dispositive motions. *See Wilson v. Grp. Hospitalization & Med. Servs., Inc.*, 791 F. Supp. 309, 314 (D.D.C. 1992) (observing that death is the "ultimate irreparable injury"). Indeed, courts frequently hold that, where feasible, preliminary injunction motions should be based on the administrative record.[2] And when presenting dispositive motions seeking final relief, Plaintiffs must have access to "the whole record." 5 U.S.C. § 706.

---

[2] *See, e.g.*, *E. Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094, 1107 (N.D. Cal. 2018) ("[T]o the extent practicable, a court should determine a plaintiff's likelihood of success on the merits of such a challenge based on the administrative record."); *Nat'l Ass'n of Mortg. Brokers*. 770 F. Supp. 2d at 288-89 (granting motion to expedite production of the administrative record "in order to develop the factual record for consideration in connection with [plaintiff's] motion for a preliminary injunction and to further demonstrate that [plaintiff] is likely to succeed on the merits"); *see also Atieh v. Riordon*, 727 F.3d 73, 76-77 (1st Cir. 2013) (looking to "whether the administrative record sufficiently supports the agency's decision")

Without the expedited production of this record following this Court's denial of Defendants' motion to dismiss, Plaintiffs could be forced to move for a preliminary injunction in order to have a hope of obtaining desperately-needed relief, and to litigate that motion without the proper benefit of records and information that exist exclusively within Defendants' custody and control. Thus, absent expeditious production of the administrative record, Plaintiffs' ability to demonstrate that they are entitled to the time-sensitive preliminary injunctive relief that they desperately need might be hampered. *See Calderon Jimenez*, 326 F.R.D. at 362 ("[T]he limited . . . discovery being ordered is appropriate to allow the court . . . to proceed as promptly as possible to the motion[] for a preliminary injunction[.]").

Second, ordering production of the administrative record within a specified, short period following this Court's ruling on Defendants' motion to dismiss would not unduly burden them. Defendants are obligated to produce the administrative record anyway. *See* 5 U.S.C. § 706 (describing record for court's review). Thus, when evaluating any burden on Defendants from producing the administrative record soon after this Court's ruling on the motion to dismiss, the Court's analysis focuses only on any *marginal* increase in burden from preparing the record under the timeline requested. In this case, by early July, Defendants represented that they had located Plaintiffs' A-Files, which this Court observed "should be relatively easy to turn . . . over." July 7 Tr. at 6:2–3. And Defendants have been representing for months that the production of the full administrative record is already being "expedited." Aug. 2 Tr. at 17:1 ("they are compiling them expeditiously"); Ex. 1, E-Mail from D. Byerley, Defs.' Counsel, to A. DeVoogd, Pls.' Counsel (Oct. 31, 4:38 P.M. ET).

More than half a year has passed since Defendants received Plaintiffs' complaint setting forth the basis of their claims. If, during this extremely long period, Defendants have neglected

8

their obligation to prepare the complete administrative record, and instead have chosen to rush it out the door upon this Court denying their motion to dismiss, Defendants have only themselves to blame. Thus, even if there were any marginally increased burden on Defendants, it does not outweigh the serious threats faced by Plaintiffs in this case.

For these reasons, "[g]ood cause exists" to order Defendants to produce the administrative record within two weeks from the date that this Court issues its decision on the motion to dismiss. *See Calderon Jimenez*, 326 F.R.D. at 361. Plaintiffs' "request for expedited discovery is 'reasonable[] . . . in light of all of the surrounding circumstances' including 'the purpose for the discovery, the ability of the discovery to preclude demonstrated irreparable harm,'" and the marginal "burden . . . on the defendant." *See id.* (citation omitted). [3]

Good cause also exists to require the government to provide an interim status update (or ongoing updates) to the Court, including an index and description of the administrative record materials that they have compiled to date, and an explanation of the scope of the material yet to be compiled. Although purporting to have been diligently compiling the administrative record in an expedited manner for months, Defendants have been unwilling to discuss any timeline for its production—and have denied that a central agency action at issue, the change in adjudication standards, even occurred. Defendants even represented to this Court on July 7 that "there's still

---

[3] "[P]rematurity" and "likelihood of success" considerations also weigh in Plaintiffs' favor. *See Calderon Jimenez*, 326 F.R.D. at 361. Plaintiffs merely seek to expedite the government's already existing obligation to produce the record in an APA case. And based on the information currently available to them, Plaintiffs have made detailed and plausible allegations that USCIS impermissibly violated existing rules and changed its standards for adjudicating Afghan humanitarian parole applications arbitrarily, *see FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009), in violation of binding agency policy, *see Wilkinson v. Legal Servs. Corp.*, 27 F. Supp. 2d 32, 34 n.3, 60-61 (D.D.C. 1998), and without following required procedure, *see N.H. Hosp. Ass'n v. Azar*, 887 F.3d 69, 70-71 (1st Cir. 2018), while also unreasonably withholding and delaying action on those applications, *see* 5 U.S.C. § 706(1).

some unclear questions from the government's side about how or what [Plaintiffs] envision as actual administrative records with some amorphous nature of the claim[s]." July 7 Tr. at 8:8–11. Yet despite this professed confusion regarding the scope of the administrative record, Defendants have refused each of Plaintiffs' four separate requests to confer regarding the timing, scope, and status of its compilation and production. Requiring an interim status update poses no undue burden for Defendants, and will help to ensure that they will be in a position to promptly produce the complete record that is appropriate based on the allegations in this case.[4]

## **CONCLUSION**

Plaintiffs respectfully request that this Court require Defendants to submit a detailed status update (or recurring updates) describing the administrative record materials that have been and are being compiled; and order Defendants to furnish Plaintiffs with the complete, certified administrative record within two weeks of the date that the Court issues any order denying Defendants' motion to dismiss in whole or in part.

---

[4] Indeed, despite the fact that Plaintiffs' claims implicate matters of life and death, Defendants are already enjoying a longer window to prepare the administrative record than they would in many administrative cases with far lower stakes. For example, were this case in the U.S. District Court for the District of Columbia—which routinely adjudicates APA cases—Defendants would have been required by Local Civil Rule 7(n) to "file a certified list of the contents of the administrative record with the Court . . . simultaneously with the filing of a dispositive motion." This generally requires the record to be compiled at that point, when it is often produced to Plaintiffs.

Dated: November 4, 2022

Respectfully submitted,

PLAINTIFFS

By their attorneys,

/s/ *Susan M. Finegan*
Susan M. Finegan (BBO #559156)
Susan J. Cohen (BBO #553353)
John F. Quill (BBO #632216, *pro hac vice*)
Andrew H. DeVoogd (BBO #670203)
Andrew N. Nathanson (BBO #548684)
Kenneth P. Monroe (BBO #696381)
Michael P. Molstad (BBO #707524)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND
 POPEO, P.C.
One Financial Center
Boston, MA 02111
617.542.6000
SMFinegan@mintz.com

Matthew R. Segal (BBO #654489)
Adriana Lafaille (BBO #680210)
AMERICAN CIVIL LIBERTIES UNION
 FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza, Suite 850
Boston, MA 02108
617.482.3170
ALafaille@aclum.org