**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| RASUL ROE, *et al.*,<br><br>        Plaintiffs,<br><br>v.<br><br>ALEJANDRO N. MAYORKAS, *et al.*<br><br>        Defendants. | No. 22-cv-10808-ADB |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR COMPLETION OF DEFICIENT ADMINISTRATIVE RECORD,
AND FOR RECORD SUPPLEMENTATION THROUGH LIMITED DISCOVERY**

Dated:  July 19, 2023

Susan M. Finegan (BBO #559156)
John F. Quill (BBO #632216)
Andrew H. DeVoogd (BBO #670203)
Andrew N. Nathanson (BBO #548684)
Kenneth P. Monroe (BBO #696381)
Michael P. Molstad (BBO #707524)
MINTZ, LEVIN, COHN, FERRIS,
   GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA  02111
617.542.6000
SMFinegan@mintz.com

Adriana Lafaille (BBO #680210)
AMERICAN CIVIL LIBERTIES UNION
 FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza, Suite 850
Boston, MA  02108
617.482.3170
ALafaille@aclum.org

*Counsel for Plaintiffs*

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND.................................................................................................2

ARGUMENT .......................................................................................................................3

  I.     This Court Should Compel Defendants to Complete the "Certified" Administrative Record, Which Is Deficient as Produced .......................................4

         A.     Defendants Improperly Redacted the Explanation for Their Decision from Plaintiffs' Individual Files ...................................................5

         B.     Known Deficiencies in the Record, as Produced, Strongly Suggest That Defendants Failed to Include Additional Information That Should Be Within the "Complete" Record ...............................................10

         C.     Defendants Failed to Provide a Privilege Log of Withheld Documents ...................................................................................................13

  II.    Given the Facial Deficiencies of the Production to Date, the Court Should Allow Targeted Discovery Related to the Lack of Completeness ........................15

  III.   Defendants Should Supplement the Administrative Record Through Targeted Discovery Regarding Plaintiffs' Undue Delay Claims...........................17

CONCLUSION...................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abdi v. Chertoff*,
  589 F. Supp.2d 120 (D. Mass. 2007) ...............................................................................17

*Abtew v. United States Dep't of Homeland Sec.*,
  808 F.3d 895 (D.C. Cir. 2015) ...........................................................................................9

*ACLU Found., Inc. v. United States Dep't of Educ.*,
  320 F. Supp. 3d 270 (D.Mass. 2018) ................................................................................7

*Allco Renewable Energy Ltd. v. Haaland*,
  2022 U.S. Dist. LEXIS 104775 (D. Mass. June 13, 2022) .............................................12

*Bar MK Ranches v. Yuetter*,
  994 F.2d 735 (10th Cir. 1993) .........................................................................................15

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  254 F.R.D. 35 (D. Mass. 2008) .....................................................................................8, 9

*Judicial Watch Inc.v. U.S. Dep't of Defense*,
  847 F.3d 735 (D.C. Cir. 2017) ...........................................................................................8

*Mashpee Wampanog Tribal Council, Inc. v. Norton*,
  336 F. 3d. 1094 (D.C. Cir. 2003) ....................................................................................18

*Moradi v. Morgan*,
  527 F. Supp.3d 144 (D. Mass. 2021) ..............................................................................14

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) ...........................................................................................................12

*Nat'l Law Ctr. On Homelessness & Poverty v. United States VA*,
  842 F. Supp. 2d 127 (D.C. Cir. 2012) .............................................................................19

*Sierra Club v. United States Army Corps. of Eng'rs*,
  2022 U.S. Dist. LEXIS 132113 (D. Me. July 26, 2022) ........................................1, 4, 14

*Sluss v. United States*,
  2019 U.S. Dist. LEXIS 99946 (D.D.C. June 14, 2019) ....................................................8

*State of Maine v. McCarthy*,
  2016 U.S. Dist. LEXIS 159940 (D. Me. Nov. 18, 2016) ..............................................4, 5

*State v. United States Immigration & Customs Enforcement*,
    438 F. Supp.3d 216 (S.D.N.Y. 2020)..................................................................................14

*Telecomms. Rsch. & Action Ctr. v. FCC*,
    750 F.2d 70 (D.C. Cir. 1984).....................................................................................18, 19

*Towns of Wellesley, Concord & Norwood v. Fed. Energy Regul. Comm'n*,
    829 F.2d 275 (1st Cir. 1987) (per curiam) ..................................................................18

*Tummino v. Von Eschenback*,
    427 F. Supp. 2d 212 (E.D.N.Y. 2006) ...................................................................17, 18

*Vidal v. Duke*,
    2017 U.S. Dist. LEXIS 232438 (E.D.N.Y. Oct. 17, 2017)...........................................4, 14, 15

**Federal Statutes**

5 U.S.C. § 706.............................................................................................................4, 17, 19

8 U.S.C. § 1182.......................................................................................................................5

iii

**INTRODUCTION**

This Court ordered Defendants to produce the complete administrative record for this case, including the "records relevant to changes in the standards applied to applications from Afghan nationals remaining in Afghanistan and the pace of adjudications of Afghan humanitarian parole applications." *See* ECF No. 69 at 38. Defendants' production is deficient, and hinders the ability of this Court to decide the merits of this case. *See, e.g.*, *Sierra Club v. United States Army Corps. of Eng'rs*, 2022 U.S. Dist. LEXIS 132113, at *4 (D. Me. July 26, 2022) (noting that court should not consider "less than" what was before agency at time it made its decision). Accordingly, Plaintiffs seek an order compelling completion of the administrative record in certain respects, including requiring a full privilege log, and allowing limited discovery to supplement the record Defendants produced.

With regard to completion, the record as produced so far omits certain categories of important information, both known, and believed, to have been improperly withheld by Defendants. This information is highly relevant to Plaintiffs' claims and are part of "the complete" administrative record that should have been produced. Plaintiffs accordingly seek:

- Material redacted from the produced record on inapplicable claims of the "deliberative process" privilege, such as the specific agency rationales for denying Plaintiffs' humanitarian parole applications;

- Additional documents that were before the agency at the time it rendered its decision but are missing from the record. Plaintiffs have a good-faith basis to assert that such materials exist based on (1) Defendants' concession that they have omitted an unspecified number of documents from the record without noting them on a privilege log, and (2) the dearth of materials in the administrative record provided that are reflective of the decision making process at issue in this case.

- A privilege log including *all* documents withheld from the administrative record on grounds of privilege, not merely those documents that were provided in partially-redacted form. Plaintiffs respectfully request that Defendants be ordered to provide this log prior to a hearing on this motion.

Further, given the problems with Defendants' production thus far, supplementation of the record in this case through targeted discovery regarding the approach to the search, compilation, and production of the record is amply justified. Additional targeted discovery is also necessary for information highly relevant to and probative of Plaintiffs' undue delay claims that is beyond the scope of even a properly completed administrative record.

## FACTUAL BACKGROUND

This is a unique case in which the government denied the existence of the challenged agency action, purported to be too confused about Plaintiffs' claims to produce the administrative record, and refused repeated efforts by Plaintiffs to meet and confer regarding that record. More than one year after this litigation began, Defendants finally produced what they claim is the complete administrative record. The full scope of that production is (1) Plaintiffs' individual files related to their humanitarian parole ("HP") applications, and (2) a collection of 130 documents from USCIS. The documents consist of, for example, a handful of policy manual drafts, some internal emails, sample forms, a slide deck or two, and excerpts from the Congressional Record.

Plaintiffs filed their Complaint in this matter over a year ago, alleging real-world exigencies, including the potential for the ultimate irreparable harm of death due to Defendants' failure to timely adjudicate their parole applications according to proper agency policy. *See* ECF No. 1. Plaintiffs repeatedly sought to expedited production of the administrative record. *See* ECF Nos. 25, 47. Defendants resisted these efforts. They also claimed to be confused by Plaintiffs' allegations, contending that it was therefore difficult for the Defendant agencies to identify and compile the administrative record. *See* July 7, 2022 Tr. at 8:8-11 ("[T]here's still some unclear questions from the government's side about how or what they envision as actual administrative

2

records with some amorphous nature of the claim."). Defendants later claimed that they could not possibly know which records to compile.[1] ECF No. 55 at 4.

After this Court issued its decision on Defendants' motion to dismiss and ordered the prompt production of the "complete, certified" administrative record, *see* ECF No. 69, Defendants produced within three weeks what they now contend is the "complete, certified" administrative record.[2]

In a deficiency letter, Plaintiffs argued that the record was incomplete because Defendants improperly redacted Plaintiffs' files and failed in other ways to include documents providing a full record of the challenged change in policy. *See* DeVoogd Dec. Ex. A. Among other things, although Plaintiffs cannot know the full scope of the material that was omitted from the record, Plaintiffs pointed out that fourteen attachments referenced in emails that were part of the certified record had been omitted. Defendants later produced two of them. Defendants provided a privilege log covering redactions to documents that they produced, but denied Plaintiffs' request for a privilege log covering the unknown number of documents that Defendants have omitted entirely from the record on the basis of some claimed, but unknown, privilege. *See* DeVoogd Dec. Ex. B. Defendants also refused Plaintiffs' request to provide limited discovery.

### ARGUMENT

Because the administrative record is incomplete, this Court should order its completion through the production of un-redacted material and additional documents that should already have been handed over. The record should also be supplemented by way of targeted discovery. Record

---

[1]/ Over the span of many months, Plaintiffs repeatedly attempted to confer with Defendants regarding the scope of the administrative record to, among other things, address such claimed confusion. Defendants represented to this Court that they would do exactly that. *See* July 7, 2022 Tr. at at 5:24-8:14 ("I think it would be appropriate to speak a little further with client agencies and *then confer with plaintiffs' counsel*."). Despite this, Defendants refused to engage in any such discussion.

[2]/ Defendants declined to respond to Plaintiffs' offer to meet and confer prior to production regarding the contents of the administrative record.

completion and supplementation are necessary to enable a full and fair assessment of the merits.

**I.     This Court Should Compel Defendants to Complete the "Certified" Administrative Record, Which Is Deficient as Produced.**

Defendants must produce "the whole record" to Plaintiffs. *See* 5 U.S.C. § 706. As this Court put it, that means "the complete" record, "relevant to Plaintiffs' remaining claims," must be produced. ECF No. 69 at 38. This includes "*all* materials that *might have influenced* the agency's decision, and not merely those on which the agency relied in its final decision. . . . This may include the work and recommendations of an agency decision maker's subordinates[.]" *State of Maine v. McCarthy*, 2016 U.S. Dist. LEXIS 159940, at *3 (D. Me. Nov. 18, 2016) (citation omitted) (emphasis added). Indeed, a basic tenet of cases challenging agency process and procedure is that "a court should generally consider neither more nor less than what was before the agency at the time it made its decision." *Sierra Club*, 2022 U.S. Dist. LEXIS 132113, at *4 (internal quotations omitted).

While a presumption adheres that an agency has satisfied its obligations to hand over the complete administrative record upon certification, that presumption is "rebutted by 'clear evidence' that the record omits relevant materials." *Vidal v. Duke*, 2017 U.S. Dist. LEXIS 232438, at *19 (E.D.N.Y. Oct. 17, 2017) (citation omitted). Such clear evidence is present in this case, demonstrating conclusively that the record Defendants finally produced after nearly a year of litigation is not yet complete. As a result, where (as here) "a party has rebutted the presumption of regularity by showing that documents were actually within the whole record but were omitted from the documents the agency certified," the court should order the agency "to complete the true administrative record." *Sierra Club*, 2022 U.S. Dist. LEXIS 132113, at *4.

Here, Defendants have failed to provide the true and complete administrative record. They must do so in order to enable the full and fair adjudication of the merits of Plaintiffs' claims. As

logic and fairness dictate, an agency "may not skew the [administrative record] in its favor by excluding pertinent but unfavorable information[,]" just as it may not exclude information on the grounds that the agency did not rely on that information for its final decision. *McCarthy*, 2016 U.S. Dist. LEXIS 159940, at *2. Three main categories of deficiencies exist that Defendants' must cure.

**A.     Defendants Improperly Redacted the Explanation for Their Decision from Plaintiffs' Individual Files.**

Defendants produced files for each Plaintiff's humanitarian parole application which consist of application materials, USCIS correspondence, and decision information. But Defendants redacted the explanation for their decision under the deliberative process privilege. That privilege does not apply.

USCIS policy outlines the process for deciding humanitarian parole applications. Under the USCIS Humanitarian Affairs Branch Procedures Manual (the "Manual"), an adjudicating officer makes the decision whether to grant humanitarian parole. *See* DeVoogd Dec. Ex. C at USCIS-00000093 (Manual stating that the "officer must document ***his or her decision***"). "Once an officer has reached a decision on the parole request, he or she must document the decision" in accordance with the Manual. *Id.* First, mirroring the two statutory bases for parole in 8 U.S.C. § 1182(d)(5), the adjudicator must fill out two sets of yes-or-no checkboxes indicating whether "a preponderance of the evidence" establishes that there are either "urgent humanitarian reason(s)" or "a significant public benefit" for the petitioner to travel to the United States. *See, e.g.*, DeVoogd Dec. Ex. D at BADI BOE-028 (example individual file excerpt).[3] Next, the adjudicator must provide "detailed justification/analysis" for their conclusions regarding these two statutory bases

---

[3]      The black boxes are redactions placed by Defendants. Plaintiffs redacted identifying information of the Plaintiff using a white text box, and the names of individuals not at the SES level pursuant to the Parties' protective order using a text box.

for parole. *See* DeVoogd Dec. Ex. C at USCIS-00000094. If the adjudicator has determined that a statutory basis for parole exist, they must still respond to a series of questions justifying the decision whether or not to exercise discretion to grant parole. *Id.* After the adjudicator makes their decision whether or not to grant humanitarian parole, a supervisor reviews the decision to ensure that it is consistent with law, guidance, and USCIS policy. *See id.* at USCIS-00000099-100 (emphasis added). As explained in the Manual:

> Supervisory review is ***not intended to be a re-adjudication of the officer's decision***. If the decision is documented on the [Parole Adjudication Worksheet] in accordance with this Procedures Manual and the Parole Training Module, and the decision is an appropriate exercise of the officer's discretion in considering all relevant factors, ***the supervisor will not substitute his or her judgment for the officer***. Rather, the supervisor should generally defer to the officer's decision, unless it is contrary to guidance or law, or is inconsistent with USCIS policy.

*See id.* (emphasis added).[4]

In their production of the administrative record in this case, Defendants withheld the portion of each file in which the USCIS adjudicator provided their reasoning for determining whether a statutory basis for parole exists and whether discretion should be favorably exercised. In other words, Defendants withheld the post hoc *explanation* for the reason each officer made their decision. But that is not information protected by the alleged "deliberative process" privilege, which protects material reflecting or memorializing ***pre***-*decisional* contemplation of the outcome—it does *not* protect an explanation of the reasons why an outcome is reached.

In an attempt to justify this redaction, Defendants claim in their privilege log that the

> [r]edacted lines are the first line adjudicators' analysis of the evidence submitted and details supporting the recommendation for a decision on this individual's

---

[4] The decision may also be reviewed by a second-line supervisor. *See* DeVoogd Dec. Ex. E at AAZAR DOE-620.

application, including analysis on whether an exercise of discretion is appropriate.
This is submitted for supervisory review and ultimate decision-making.

*See, e.g.*, DeVoogd Dec Ex. F. Some, but not all, of these privilege log entries add that the

redactions are of "pre-decision notations by the first-line adjudicator." Further, in response to

Plaintiffs' deficiency letter challenging these redactions, Defendants claimed that:

> First-line adjudicator's write-up with his or her impressions of the application and
> the evidence submitted therewith is a pre-decisional and deliberative
> recommendation to the supervisor. The final decision is the decisional letter that
> Plaintiffs received, which does not reference the underlying worksheet. Such
> materials are textbook examples of material properly withheld under the
> deliberative process privilege.

*See* DeVoogd Dec Ex. B at 2.

But these explanations are belied by Defendants' own Manual. The decision details are not

covered by the deliberative process privilege for multiple reasons:

*First*, Defendants make no effort to explain their reliance on the deliberative process

privilege to redact the results and explanations provided by supervisors who reviewed the decisions

of adjudicatory officers regarding the Plaintiffs' humanitarian parole applications.[5] To the

contrary, Defendants contend that supervisors are the true decision makers. This only undercuts

their reliance on the deliberative process privilege.

*Second*, Defendants' assertion that the adjudicating officer's analysis is a "pre-decisional

and deliberative recommendation to the supervisor" misrepresents the adjudicators' role in the

decision-making process as set forth in USCIS's own Manual. To qualify for the deliberative

process privilege, the document must be ***pre***-decisional, which requires that the "author prepared

the document for the purpose of assisting the agency official charged with making the agency

---

[5] For reasons that Plaintiffs do not understand, files for the Doe family were produced in a different format than the files for the remaining Plaintiffs. For the Doe family only, Defendants provided an unredacted section indicating that the first-line supervisor had "concur[red] with decision" without comment, while redacting information pertaining to possible review by a "second-line supervisor." Other individual files produced redact all record of any supervisory review. *Compare* DeVoogd Dec. Ex. D and Ex. E.

7

decision[.]" *ACLU Found., Inc. v. United States Dep't of Educ.*, 320 F. Supp. 3d 270, 277 (D.Mass. 2018). Pursuant to the Manual, the adjudicating officer's notes—namely, the information Defendants withheld from the record—are *not* "impressions and recommendations to a supervisor regarding agency action." *See* DeVoogd Dec. Ex. B at 2. Instead, they document and embody ***the officer's decision whether or not to grant parole***. *See* DeVoogd Dec. Ex. C at USCIS-00000093 (Manual stating that "officer must document ***his or her decision***," not make a recommendation to a supervisor). Because the adjudicating officer makes the decision whether or not to grant parole, notes explaining and accompanying that decision are *not* covered by the deliberative process privilege: "The deliberative process privilege does not shield documents that simply state or explain a decision the Government has already made." *In re Pharm. Indus. Average Wholesale Price Litig.*, 254 F.R.D. 35, 40 (D. Mass. 2008). But that is precisely the information that Defendants improperly redacted here.[6]

*Third*, even if the adjudicators' decisions were part of a protected deliberative process before the supervisor's agreement (and they are not), that front-line decision became the agency's formal decision upon supervisor review and approval. This strips away any possible deliberative process protection. That is because a "document can lose its predecisional character – and the protections of the privilege – if an agency adopts the document as its own." *Judicial Watch Inc.v. U.S. Dep't of Defense*, 847 F.3d 735, 739 (D.C. Cir. 2017); *accord Sluss v. United States*, 2019 U.S. Dist. LEXIS 999946, at *11-12 (D.D.C. June 14, 2019) (if agency adopts "author's reasoning as its own . . . the document's predecisional character would cease"). Consequently, the adjudicator's explanations are not covered by the deliberative-process privilege. *See, e.g.*, *Judicial*

---

[6] Responding to Plaintiffs' deficiency letter, Defendants assert that the "final decision is the decisional letter that Plaintiffs received, which does not reference the underlying worksheet." *See* DeVoogd Dec. Ex. B at 2. This claim is puzzling; the worksheet memorializes the decision to issue the decisional letter.

*Watch*, 847 F.3d at 739 (adoption of document by agency extinguishes deliberative process privilege).[7]

*Fourth*, even if the redactions somehow cover information that qualifies as pre-decisional deliberative process (it does not), Plaintiffs' need for the information outweighs any potential interest by Defendants in non-disclosure. The deliberative process privilege is "not automatic," and the movant may make a "showing of necessity sufficient to outweigh the adverse effects the production would engender." *In re Pharm. Indus. Average Wholesale Price Litig.*, 254 F.R.D. 35, 40 (D. Mass. 2008) (internal quotation omitted). That necessity here outweighs any possible adverse effect of production. The information withheld by Defendants shows how and why adjudicators decided HP applications—a key reflection of how the challenged change in policy played out in each case.

In weighing Plaintiffs' necessity against possible adverse effects of disclosure, the Court balances:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are voidable.

*Id*. at 40. All of these factors weigh strongly in favor of production, and against continued withholding.

---

[7] In some cases, mere adoption of a decision may not be sufficient to erode deliberative process status, because the agency may adopt the recommendation without "adoption or approval of all of the [recommendation's] reasoning." *Abtew v. United States Dep't of Homeland Sec.*, 808 F.3d 895, 899 (D.C. Cir. 2015). But here, USCIS cannot adopt the adjudicator's decision without adopting the underlying reason. According to the agency's own protocols, the adjudicator's reasoning governs. That is because the supervisor is not permitted to "re-adjudicat[e] . . . the officer's decision" nor "substitute his or her judgement for the officer." *See* DeVoogd Dec. Ex. C at USCIS-00000099-100. If the supervisor signs off on the adjudicator's decision, the adjudicator's reasoning and analysis are confirmed to be the decision of USCIS.

First, the redacted information is evidence that goes *directly* to what policy was applied to Afghan HP applicants, including the impact of the agency's November 2021 policy in precluding the grant of applications on behalf of Afghans. As noted, this strikes at the very heart of the merits of Plaintiffs' claims.[8] Second, although there is other evidence in the administrative record that USCIS in fact changed its policy towards Afghan humanitarian parole applicants, the adjudicators' explanations may well provide vital information about how the agency put that policy change into practice. Third, this litigation is indisputably serious. Plaintiffs remain in imminent danger, and live daily in fear of being killed. Fourth, the government and the challenged policy change are at the core of this litigation. Fifth, there is little (if any) risk of future timidity of government employees, who will still be required to document the reasons for their decisions. And any modest risk would not outweigh the other factors, and could, in any event, be mitigated by excluding materials from the public record rather than withholding them from Plaintiffs and the Court.

In sum, even if there were a plausible argument that the withheld material was privileged (and for the reasons discussed, no privilege can adhere), the relevant factors strongly favor disclosure. The necessity for Plaintiffs' case far outweighs any possible adverse consequences of disclosure. This Court should compel the production of unredacted individual files.

**B.**     **Known Deficiencies in the Record, as Produced, Strongly Suggest That Defendants Failed to Include Additional Information That Should Be Within the "Complete" Record.**

Even without the benefit of a privilege log, Plaintiffs know that the purported "complete, certified" administrative record is anything but complete. At a minimum, these known deficiencies in the record must be cured in order to satisfy Defendants' obligations under the Court's order of

---

[8]     The evidence of what standard was applied to Afghan applicants as shown through actual adjudications is especially important here, where, up until the production of the administrative record, Defendants refused to even acknowledge a policy change had taken place. Even from the limited record production thus far, we now know this to be untrue.

April 10, 2023 that the record produced be "complete."

For example, there is a dearth of documents reflecting the decision-making process behind the November policy guidance (or the decision to issue Afghan-specific guidance at all). *See* DeVoogd Dec. Ex. G. Defendants produced documents preceding the November 5, 2021 policy for Afghan humanitarian parole requests (and November 1, 2021 draft); but these documents do not adequately reflect or evidence the decision-making behind its adoption. Defendants only produced fifty-five documents that predate the November policy change. Very few directly relate to the Parole Requests for Afghan Nationals Interim Policies and Procedures promulgated in November 2021. Particularly:

- Two are documents discussing expediting Afghan humanitarian parole applications in late August, 2021. *See* USCIS-00000973, 975, 740, 742.[9/]

- Two are documents discussing the pause in adjudications in the fall of 2021 (after the decision to pause adjudications was decided). *See* USCIS-00000554, 713.

- Nine are documents discussing procedure while on handling Afghan applications leading up to and during the pause in adjudications. *See* USCIS-00000916, 720, 706, 719, 721, 709, 914. 909, 954.

- Two are documents discussing updates to the USCIS website. *See* USCIS-00000854, 858.

- Two are drafts of the standard approval/denial notice for Afghans. *See* USCIS-00000920, 702.

- Four are documents discussing medical requirements for Afghan applicants. *See* USICS-00000886, 888, 891, 878.

- One is documents discussing vetting requirements for Afghan applicants. *See* USCIS-00000906.

- Two are documents discussing benefits for Afghan applicants who are approved. *See* USCIS-00000987, 990.

- One is a document soliciting USCIS staff members to volunteer to help with parole adjudications. *See* USCIS-00000959.

---

[9/]     Plaintiffs are happy to provide the referenced documents to the Court if it wishes to review.

11

Thus, of the fifty-five documents pre-dating the November policy change, approximately half of them are decidedly *not* "documents and materials directly or indirectly considered by agency decision-makers." *See Allco Renewable Energy Ltd. v. Haaland*, 2022 U.S. Dist. LEXIS 104775, at \*9 (D. Mass. June 13, 2022). There are only approximately thirty documents that predate the November policy document that actually reflect "relevant data," "whether the decision was based on a consideration of the relevant factors," or the "evidence before the agency[.]" *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). These scant documents include information provided to Director Jaddou and the discussions of the need for a new, Afghan-specific policy. Simply put, it stretches all reasonable belief that there are not more than thirty documents reflecting the agency decision-making process. *All* such documents must be included as part of the record. *Id*. Defendants should be compelled to produce them.

To give a specific example, relevant and probative inter-agency communication undoubtedly took place—but these communications were also withheld from the record. For example, a November 5, 2021 email circulating the new policy references language received from the National Security Council; yet Defendants have not produced any communications with, or information received from, the National Security Council. Defendants claimed in their response to Plaintiffs' deficiency letter that two withheld documents were from the National Security Council—an admission that these communications occurred and Defendants withheld them. *See* DeVoogd Dec. Ex. B. Defendants also claimed that these documents are not part of the record because they were about "incorporating Afghans outside of Afghanistan into Operation Allies Welcome[.]" *See id*. Defendants' contention that these documents are not relevant to Plaintiffs' claims—the express scope of this Court's Order of production—is puzzling when one looks at the produced record: the white paper Defendants refuse to produce on integrating individuals into

Operation Allies Welcome proposed the *same* factors for consideration that were ultimately included in the November humanitarian policy related to Afghans in Afghanistan. *See* DeVoogd Decl. Ex. H and Ex. I. This is not a coincidence; USCIS appears to have considered, and ultimately adopted the reasoning of, the National Security Council white paper when drafting the new policy.

These categories of documents and communications go to the heart of Plaintiffs' claims.[10] They should have been included in the produced record, but were instead withheld. This unjustified omission must be cured. Beyond this, serious questions exist regarding the metes and bounds of the identification, search, collection, review, and production of the purported "complete, certified" administrative record in this case. Defendants should be compelled to revisit this effort to properly include any and all such materials that were improvidently excluded from the initial production.

### C.    Defendants Failed to Provide a Privilege Log of Withheld Documents.

Based on Plaintiffs' knowledge thus far, Defendants failed to produce documents in their entirety without providing any privilege log to substantiate or even attempt to justify their withholding. Even without identifying these withheld documents on a privilege log, Plaintiffs know that Defendants withheld certain documents, at least because emails included in the record

---

[10]    Yet another example is Defendants' failure to provide any documents or communications regarding the decision to pause adjudications of Afghan applications in September 2021. The USCIS Corrected Administrative Record Certificate states that the record contains documents that "relate to the decision-making process to temporarily pause parole processing in order to review parole policy and procedures[.]" But, the record only contains internal USCIS emails *transmitting the already-made decision* to pause the adjudication of Afghan applications. Between the September 1, 2021 instruction to stop expediting Afghan parole requests and the September 7, 2021 email instruction to stop issuing decisions for Afghan parole requests altogether, there are *only four documents in the record*. It is incredible to suggest that the decision to stop issuing decisions to Afghans seeking humanitarian parole in the midst of the unfolding humanitarian crisis (a pause that ended up lasting almost two months) was not discussed by the deciding agency in any communications, internal or external. Further, there are no documents in the record reflecting the decision to resume "deny[ing] cases for those who are ineligible" on October 26, 2021. Indeed, there are only communications transmitting the decision. *See* DeVoogd Decl. Ex. J. These are glaring omissions from the record. The government also purports to have supplied an administrative record relevant to "updated guidance" that USCIS silently rolled out in April of 2022. ECF No. 79-24. But other than the guidance itself and associated training materials, and materials relating to the process for obtaining agency approval of the new guidance, the record contains almost nothing that demonstrates what the agency considered or the rationales for its decision to alter its standards in part.

referenced and appeared to attach documents that Defendants failed to produce. In response to Plaintiffs' deficiency letter, Defendants claimed for the first time that most of the documents were withheld on the basis of privilege. *See* DeVoogd Decl. Ex. B. As noted, Plaintiffs were unaware of these privilege claims, and have been unable to assess their purported basis or learn the number and types of documents withheld because Defendant have refused to provide a privilege log of withheld documents.[11/]

Plaintiffs and courts in the First Circuit are entitled to a privilege log to "assess whether an agency has properly characterized a document as part of the deliberative process." *Sierra Club*, 2022 U.S. Dist. LEXIS 132113, at \*9-10. Indeed, a "growing consensus of district courts has required an agency to submit a log if it withholds from the administrative record any deliberative process information or documents" because, among other reasons, "agencies usually have the burden of establishing a document is protected." *Id.* at \*7-8 (collecting cases).[12/]

Here, Defendants admitted in their response to Plaintiffs' deficiency letter that they are withholding documents as privileged. *See* DeVoogd Decl. Ex. B. But these are only the specific documents that Plaintiffs were able to identify from the existing record. Absent a privilege log, Plaintiffs, and by extension the Court, cannot know how large the universe of purportedly privileged documents is, and whether the claim of privilege for any given document is valid. *See Moradi v. Morgan*, 527 F. Supp.3d 144, 155 (D. Mass. 2021) ("the government carries the burden

---

[11/] Defendants' inconsistent and unreliable application of deliberative process privilege is shown by a document produced as part of the administrative record in this case with redactions for deliberative process. *See* DeVoogd Dec. Ex. K. But Defendants produced the same document in response to a prior FOIA request, without any redactions. *See* DeVoogd Dec. Ex. L. (produced in response to International Refugee Assistance Project October 26, 2021 FOIA request seeking information on Afghan humanitarian parole requests).

[12/] *See, e.g.*, *State v. United States Immigration & Customs Enforcement*, 438 F. Supp.3d 216, 218 (S.D.N.Y. 2020) (explaining that even if "intra- agency materials that genuinely fall under the deliberative process privilege are not part of the administrative record," "[i]t does not follow . . . that courts should not have a role in reviewing whether privilege was properly invoked and applied to particular documents so withheld"); *Vidal*, 2017 U.S. Dist. LEXIS 232438, at \*21 ("If Defendants did not produce a complete administrative record in the first instance . . . the court does not see why it should presume that they correctly withheld privileged materials from the record").

of establishing the applicability of the" deliberative process privilege). Consistent with Plaintiffs'

long-held concern regarding the administrative record in this case, the circumstances here strongly

suggest that Defendants are withholding additional, highly relevant documents. This concern has

already been borne out. When Defendants reviewed the documents known by Plaintiffs as missing

from the record, Defendants admitted that two documents were not actually privileged yet had

been improperly withheld. Actual documents admitted to be improperly withheld on the basis of

inapplicable privilege strongly supports the conclusion that there are similar documents likewise

withheld by Defendants without justification.

The Court should order Defendants to produce a full log, before any hearing on this Motion,

identifying every relevant document withheld as privileged, along with the justification, to allow

Plaintiffs and the Court to ascertain whether Defendants' privilege claims are valid.

## II.    Given the Facial Deficiencies of the Production to Date, the Court Should Allow Targeted Discovery Related to the Lack of Completeness.

Where, as here, "a showing is made that the record may not be complete, limited discovery

is appropriate to resolve the question." *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir.

1993); *see also Vidal*, 2017 U.S. Dist. LEXIS 232438, at *19 (if there is a suggestion that the

record is not complete, the court may order "limited discovery . . . as to the completeness of the

administrative record").

Defendants' conduct throughout this case, and the deficiencies in the produced record,

amply justify targeted discovery into how Defendants compiled the administrative record. In

particular, Defendants repeatedly denied Plaintiffs' allegation that USCIS adopted a new policy

governing Afghan humanitarian parole applications around November 2021. *See* ECF No. 52 at

11:20-24 (Defendants stating that "it's the government's position that where there has been no

change in policy where none of these new quite policies are true, the government does not need to

15

go through notice and comment to continue a practice or policy that has always existed"); ECF No. 52 at 26:7-12 (Defendants stating that Plaintiffs' "claim that new standards suddenly came into existence sometime in November 2021, but they don't allege how that's any different than the standards that apply in July 2021"). Defendants complained that they were "tasked with compiling a record tied to no specific decision." ECF No. 55 at 17.

Despite arguing to the court that they did not know how to compile an administrative record for a policy that "has always existed," Defendants produced a record certification from USCIS that states the record includes "documents relate[d] to the decision-making process to temporarily pause parole processing in order to review parole policy and procedures and the resulting ***updated guidance that was issued in late 2021 and 2022.***" ECF No. 79-24 at 2 (emphasis added). That updated "guidance," titled "Parole Requests for Afghan Nationals Interim Policies and Procedures," set forth new, more restrictive, eligibility criteria specific to Afghans, with the direction that applicants "generally will be denied." In other words: a changed policy. That is precisely what Plaintiffs alleged in their Complaint filed over a year ago. *See* ECF No. 1 at ¶¶ 53-57. This document, and others in the limited record produced so far, stand in stark contrast with the representations that Defendants made to this Court.

Plaintiffs' need for limited discovery into how Defendants compiled the administrative record is not based solely on Defendants' past representations to this Court. As discussed above, the record is plainly inadequate and improperly compiled on its face. Defendants' insistence that there was no policy change affecting Afghan applicants, even at a time when they claimed they were in the process of compiling the record (*see* ECF No. 55 at 19), begs the question how they possibly compiled the record ultimately produced. It also undermines the reliability of Defendants' certification that they have produced "the complete" record.

16

So too do the records produced, which include a smattering of just 54 documents from 2021 that precede this dramatic change in policy. Among other things, these documents do not reveal the rationales for the policy change, any alternatives considered, the reasons why already-issued approvals would have to be withdrawn (see ECF No. 1 at ¶ 58), or the instructions or suggestions that USCIS received from DHS headquarters or from other agencies or sub-agencies. Simply put, given the importance of the policy change and its impact on tens of thousands of applications received during a growing humanitarian crisis, there must be more. And Plaintiffs are entitled to understand the limiting guardrails Defendants employed in reaching such a slim record.

For these reasons, Plaintiffs respectfully request limited discovery into how Defendants compiled the administrative record to ensure the Plaintiffs and the Court have full access to the materials considered by USCIS when it promulgated the new policy. This limited discovery would include targeted interrogatories about the record, as well as a designee deposition of USCIS regarding the documents and information considered in formulating the new policy.

**III.    Defendants Should Supplement the Administrative Record Through Targeted Discovery Regarding Plaintiffs' Undue Delay Claims.**

The APA requires courts to 'compel agency action unlawfully withheld or unreasonably delayed.'" *Abdi v. Chertoff*, 589 F. Supp.2d 120, 121 (D. Mass. 2007); *see also* 5 U.S.C. § 706(1). Here, Plaintiffs are entitled to discovery on their delay and mandamus claims because this Court's review "of agency conduct is not limited to the record in [such] an action." *Tummino v. Von Eschenback*, 427 F. Supp. 2d 212, 231 (E.D.N.Y. 2006) (quoting *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000)). Indeed, this Court previously noted that Plaintiffs' delay claims require "a fact-bound analysis." *See* ECF No. 69 (Apr. 10, 2023) (quoting *Litvin v. Chertoff*, 586 F. Supp. 2d 9, 12 (D. Mass. 2008) ("The question of whether that delay is unreasonable goes to the merits of the case, not this court's jurisdiction, and is ***better addressed***

***after Parties have engaged in discovery***.") (emphasis added)). And Defendants themselves have made the argument that "in claims asserting delay or agency inaction, ***there is no record to review.***" *See* ECF No. 45 (July 25, 2022) (citing *Dastagir v. Blinken*, 557 F. Supp.3d 160, 164 n.5 (D.D.C. 2012) ("[I]f an agency fails to act, there is no 'administrative record' for a federal court to review")). Limited discovery is not only justified, but necessary.[13]

The "[r]esolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." *Mashpee Wampanog Tribal Council, Inc. v. Norton*, 336 F. 3d. 1094, 1100 (D.C. Cir. 2003). To determine whether USCIS has unreasonably delayed adjudication of Plaintiffs' applications, courts in this Circuit have applied the "*TRAC*" factors. *See Towns of Wellesley, Concord & Norwood v. Fed. Energy Regul. Comm'n*, 829 F.2d 275, 277 (1st Cir. 1987) (per curiam) (citing *Telecomms. Rsch. & Action Ctr. v. FCC* ("TRAC"), 750 F.2d 70, 79 (D.C. Cir. 1984)). The *TRAC* factors require the Court to assess: (1) a "rule of reason' governs the time agencies take to make decisions;" (2) "delays where human health and welfare are at stake are less tolerable than delays in the economic sphere;" (3) "consideration should be given to the effect of ordering agency action on agency activities of a competing or higher priority;" (4) "the court should consider the nature of the interests prejudiced by delay;" and (5) "the agency need not act improperly to hold that agency action has been unreasonably delayed." *Town of Wellesley*, 829 F.2d at 277. To properly consider the *TRAC* factors, specifically the "rule of reason" and the inquiry into "the legitimacy of the reasons offered for the delay," discovery "must be permitted." *See Tummino*, 427 F. Supp. 2d at

---

[13] In May 2023, USCIS issued notices indicating "Continued Parole Processing" for the Moe plaintiffs. Counsel for the Defendants has to date not responded to outreach from Plaintiffs regarding further action for the Moe family. The Boe family's administrative motions for reconsideration have been pending since June 2022 (in the case of the applications filed by Basel Boe) and August 2022 (in the case of the applications filed by Baddar Boe). The Doe family's motions for reconsideration have been pending since March 2022.

231. This is because "when it comes to agency inaction under 5 U.S.C. § 706(1), 'review is not limited to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record.'" *Nat'l Law Ctr. On Homelessness & Poverty v. United States VA*, 842 F. Supp. 2d 127, 130 (D.C. Cir. 2012) (quoting *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000)). In other words, "if an agency fails to act, there is no 'administrative record' for a federal court to review." *Id.* Discovery is therefore required because "agency delay is not necessarily a discrete event resulting from a decision based upon some sort of administrative record, but may be simply . . . … after-the-event justifications[] which may need to be explored by plaintiffs." *Id.* at 130 (quoting *Milanes v. Chertoff*, 2008 U.S. Dist. LEXIS 39218, at *1 (S.D.N.Y. May 13, 2008)).

In particular, to properly determine whether the delay in adjudicating Plaintiffs' applications was reasonable, Plaintiffs and this Court need relevant and probative information outside the existing administrative record such as, for example, evidence regarding: staffing levels at relevant times; the pace of adjudications; competing agency priorities; the propriety of the agency's inaction under the circumstances; the agency's decision and ability to more quickly adjudicate HP applicants from other countries (e.g., Ukraine) and why; and so on. Information relevant and probative of these topics could be elicited through a small number of targeted interrogatories (no more than five to seven), requests for production of documents and things (no more than five), and a limited designee deposition of no more than five hours on the record.

All of this information will tend to prove or disprove that the pace of Afghan humanitarian parole adjudications suffered from undue delays under the circumstances. Without this information, the Court will be unable to fully and fairly determine the reasonableness of the delay through the lens of the *TRAC* framework.

19

## CONCLUSION

For these reasons, Plaintiffs respectfully request that this Court grant their Motion to Compel Expedited Production of the Administrative Record and order Defendants to furnish Plaintiffs with the complete, certified administrative record and allow the targeted discovery requested.


Dated: July 19, 2023                              Respectfully submitted,

                                                  PLAINTIFFS

                                                  By their attorneys,

                                                  /s/ *Susan M. Finegan*
                                                  Susan M. Finegan (BBO #559156)
                                                  John F. Quill (BBO #632216)
                                                  Andrew H. DeVoogd (BBO #670203)
                                                  Andrew N. Nathanson (BBO #548684)
                                                  Kenneth P. Monroe (BBO #696381)
                                                  Michael P. Molstad (BBO #707524)
                                                  MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND
                                                    POPEO, P.C.
                                                  One Financial Center
                                                  Boston, MA 02111
                                                  617.542.6000
                                                  SMFinegan@mintz.com

                                                  Adriana Lafaille (BBO #680210)
                                                  AMERICAN CIVIL LIBERTIES UNION
                                                    FOUNDATION OF MASSACHUSETTS, INC.
                                                  One Center Plaza, Suite 850
                                                  Boston, MA 02108
                                                  617.482.3170
                                                  ALafaille@aclum.org

20