UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| RASUL ROE, *et al.*, | * * * | |
| Plaintiffs, | * * | |
| v. | * * | |
| ALEJANDRO MAYORKAS, *et al.*, | * * | Civil Action No. 22-cv-10808-ADB |
| Defendants. | * * * * | |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

Presently before the Court is Plaintiffs' motion for completion and/or supplementation of the administrative record, [ECF No. 90]. For the reasons discussed below, the motion is GRANTED in part and DENIED in part.

## I.    BACKGROUND

### A.  Procedural Background

After ruling on Defendants' motion to dismiss on April 28, 2023, the Court ordered Defendants to produce the "complete, certified administrative record," as relevant to Plaintiffs' remaining claims, [ECF No. 69], including Plaintiffs' "individual humanitarian parole applications and records relevant to changes in the standards applied to applications from Afghan nationals remaining in Afghanistan and [documentation of] the pace of adjudications of Afghan

humanitarian parole applications." [1]  [ECF No. 69 at 38].  In June 2023, Defendants accordingly

filed a certified administrative record, [ECF Nos. 79, 82–83], which included a corrected

administrative record, [ECF No. 85].  On July 19, 2023, Plaintiffs filed the instant motion for

completion of the administrative record and limited discovery, Defendants opposed on August 2,

2023, and Plaintiffs filed a reply on August 10, 2023.  [ECF Nos. 91, 94 ("Opp'n"), 97

("Reply")]. [2]

### B.  Factual Background

The Court set out the facts relevant to this case in detail in its preliminary injunction

order, [ECF No. 141], and it assumes familiarity with those facts and incorporates them herein.

## II.    LEGAL STANDARD

"The focal point of APA review is the existing administrative record."  Atieh v. Riordan,

727 F.3d 73, 76 (1st Cir. 2013) (citing Camp v. Pitts, 411 U.S. 138, 142 (1973) (per curiam)).

Specifically, "[w]hen reviewing an agency's decision under the arbitrary and capricious

standard, 'the focal point for judicial review should be the administrative record already in

existence, not some new record made initially in the reviewing court.'"  Housatonic River

Initiative v. U.S. Env't Prot. Agency, New Eng. Region, 75 F.4th 248, 278 (1st Cir. 2023)

(quoting City of Taunton, Mass. v. U.S. Env't Prot. Agency, 895 F.3d 120, 127 (1st Cir. 2018)

---

[1] Plaintiffs had previously twice moved for Defendants to expedite production of the
administrative record.  [ECF Nos. 25, 47].
[2] On October 3, 2023, a subset of Plaintiffs, the Noe and Boe families ("Preliminary Injunction
Plaintiffs"), moved for a preliminary injunction, "(1) set[ting] aside the new policy for
adjudicating humanitarian parole applications of Afghan nationals, implemented in November
2021, and restor[ing] the last uncontested status which preceded the pending controversy, i.e., the
adjudication standards in effect on August 31, 2021, and (2) order[ing] the agency to adjudicate
the parole applications of the [Preliminary Injunction Plaintiffs] under the reinstated status quo."
[ECF No. 101 at 1].  The Court ruled on the Preliminary Injunction Plaintiffs' motion on October
2, 2024.  [ECF No. 141].

(quoting Camp, 411 U.S. at 142)). Thus, generally speaking "APA review . . . involves neither

discovery nor trial." Atieh, 727 F.3d at 76.

> [The First Circuit] ha[s], however, recognized several exceptions to the rule against
> record supplementation [that is, extra-record discovery]. For example,
> supplementation is permissible where there is a "strong showing of bad faith or
> improper behavior" by the agency. Town of Winthrop v. FAA, 535 F.3d 1, 14 (1st
> Cir. 2008) (quoting Olsen v. United States, 414 F.3d 144, 155 (1st Cir. 2005)).
> [Courts] may also supplement the record "to facilitate [their] comprehension of the
> record or the agency's decision," particularly when "highly technical [] matters"
> are at issue or when the agency has "fail[ed] to explain administrative action as to
> frustrate effective judicial review." City of Taunton, 895 F.3d at 127 (first citing
> Town of Winthrop, 535 F.3d at 14; then quoting Valley Citizens for a Safe Env't v.
> Aldridge, 886 F.2d 458, 460 (1st Cir. 1989) (Breyer, J.); and then quoting Olsen,
> 414 F.3d at 155–56). Similarly, [the First Circuit] ha[s] noted that the Ninth Circuit
> allows record supplementation "when necessary to determine whether the agency
> considered all relevant factors in making its decision" or "when the agency has
> relied on extra-record materials." Ruskai v. Pistole, 775 F.3d 61, 66 (1st Cir. 2014)
> (quoting WildWest Inst. v. Bull, 547 F.3d 1162, 1176 (9th Cir. 2008)).

Housatonic River Initiative, 75 F.4th at 278–79 (1st Cir. 2023) (sixth alteration in original); Int'l

Junior Coll. of Bus. & Tech., Inc. v. Duncan, 802 F.3d 99, 114 (1st Cir. 2015) ("When reviewing

agency decisions, we do not allow supplementation of the administrative record without specific

evidence (i.e., a 'strong showing') of the agency's 'bad faith or improper behavior.'" (quoting

Town of Norfolk v. U.S. Army Corps of Eng'rs, 968 F.2d 1438, 1458–59 (1st Cir. 1992))).

"Notwithstanding the existence of these exceptions, supplementation of the administrative record

is 'the exception, not the rule, and is discretionary with the reviewing court.'" Housatonic River

Initiative, 75 F.4th at 279 (quoting Town of Winthrop, 535 F.3d at 14).

A party may also move to complete the record. "[T]he designation of the Administrative

Record, like any established administrative procedure, is entitled to a presumption of

administrative regularity." Oceana, Inc. v. Ross, 920 F.3d 855, 865 (D.C. Cir. 2019) (quoting

Bar MK Ranches v. Yuetter, 994 F.2d 735, 740 (10th Cir. 1993)). When parties move to

complete, rather than supplement, the administrative record, "no showing of bad faith is required and a plaintiff must only present clear evidence, which means a strong, substantial or prima facie showing that the record is incomplete." S.C. Coastal Conserv. League v. U.S. Army Corps of Eng'rs, 611 F. Supp. 3d 136, at 142 (D.S.C. 2020) (internal marks and citations omitted); Vidal v. Duke, No. 16-cv-04756, 2017 U.S. Dist. LEXIS 232438, at *19 (E.D.N.Y. Oct. 17, 2017) ("[T]he presumption that the agency produced the complete administrative record may be rebutted by 'clear evidence' that the record omits relevant materials." (quoting Bar MK Ranches, 994 F.2d at 740)).

## III. DISCUSSION

Plaintiffs appear to seek completion and supplementation of the record. [ECF No. 91 at 7–8]. Beginning with completion, Plaintiffs argue that "the record as produced so far omits certain categories of important information, both known, and believed, to have been improperly withheld by Defendants." [ECF No. 91 at 5]. As such, Plaintiffs seek: (i) non-redacted materials as to the individual plaintiffs' humanitarian parole ("HP") applications; (ii) additional documents "that were before the agency at the time it rendered its decision" in relation to the November 2021 Guidance;[3] and (iii) a privilege log comprised of "all documents withheld from the [certified] administrative record on grounds of privilege." [ECF No. 91 at 5].

### A. Redactions to Individual Plaintiffs' Applications

Plaintiffs state that for each of the Plaintiffs' HP applications, Defendants have improperly redacted the so-called Parole Adjudication Worksheets ("PAWs"), wherein

---

[3] The November 2021 Guidance refers to the document entitled "Parole Requests for Afghan Nationals Interim Policies and Procedures" dated November 5, 2021. See [USCIS-0031–42].

Humanitarian Affairs Branch ("HAB") officers "document [their] decision on a parole request," [4]

under the deliberative process privilege. [5]  [HAB Manual at USCIS-0093; ECF No. 91 at 9].

Even if the redactions of the explanations are covered by this privilege, Plaintiffs argue that the

"need for the information outweighs any potential interest by Defendants in non-disclosure[,] . . .

[because] [t]he information withheld by Defendants shows how and why adjudicators decided

HP applications—a key reflection of how the challenged change in policy played out in each

case."  [ECF No. 91 at 13].  Defendants respond that these explanations are both "pre-decisional"

and "deliberative," and therefore fall within the deliberative process privilege.  [Opp'n at 14–16].

Additionally, Defendants argue that Plaintiffs are not entitled to this information because it is

irrelevant to their alleged policy challenge and is only relevant to the individual adjudications of

their HP applications, which Plaintiffs have repeatedly insisted they are not challenging.  [Id. at

12].

        "To protect agencies from being 'forced to operate in a fishbowl,' the deliberative

process privilege shields from disclosure 'documents reflecting advisory opinions,

recommendations and deliberations comprising part of a process by which governmental

decisions and policies are formulated[.]'"  U.S. Fish & Wildlife Serv. v. Sierra Club, Inc., 592

U.S. 261, 267 (2021) (first quoting Env't Prot. Agency v. Mink, 410 U.S. 73, 87 (1973); and then

---

[4] If an applicant is outside of the United States, USCIS, through HAB processes and adjudicates
HP applications.  The Court notes that the HAB has been renamed Parole Operations.  [ECF No.
117 at 5 n.1].  As the parties have, Court will continue to refer to this entity as "HAB," which is
what it was referred to during the relevant time period.
[5] The parties refer to the HAB Procedures Manual, as revised in 2019 ("HAB Manual" (USCIS-
0048 to USCIS-0144)), and the Parole Training Module, also as revised in 2019 ("2019 Training
Module" (USCIS-0347 to USCIS-0422)), when outlining the HAB adjudication process.  The
Court, accordingly, relies on the same documents.

quoting <u>NLRB v. Sears, Roebuck & Co.</u>, 421 U.S. 132, 150 (1975) (internal quotation marks omitted)).

> The privilege . . . distinguishes between predecisional, deliberative documents, which are exempt from disclosure, and documents reflecting a final agency decision and the reasons supporting it, which are not. Documents are "predecisional" if they were generated before the agency's final decision on the matter, and they are "deliberative" if they were prepared to help the agency formulate its position. There is considerable overlap between these two prongs because a document cannot be deliberative unless it is predecisional.

<u>Sierra Club, Inc.</u>, 592 U.S. at 268 (first quoting <u>Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.</u>, 421 U.S. 168, 186 (1975)); and then <u>Sears</u>, 421 U.S. at 150–152; <u>Grumman</u>, 421 U.S. at 184–186, 190).

"Even if a document is both predecisional and deliberative, [however,] nondisclosure is not automatic." <u>In re Pharm. Indus. Average Wholesale Price Litig.</u>, 254 F.R.D. 35, 40 (D. Mass. 2008) (citing <u>Texaco P.R., Inc. v. Dep't of Consumer Affs.</u>, 60 F.3d 867, 885 (1st Cir. 1995)); <u>F.T.C. v. Warner Commc'ns, Inc.</u>, 742 F.2d 1156, 1161 (9th Cir. 1984) ("A litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure."). Rather, the privilege "is a qualified one" and "not absolute." <u>In re Pharm.</u>, 254 F.R.D. at 40 (quoting <u>Texaco P.R.</u>, 60 F.3d at 885). Courts, in exercising their discretion when determining whether to honor an assertion of the deliberative process privilege, "should consider, among other things, the interests of the litigants, society's interest in the accuracy and integrity of factfinding, and the public's interest in honest, effective government." <u>Id.</u> (quoting <u>Texaco P.R.</u>, 60 F.3d at 885). Among others, courts typically weigh the following factors:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the

litigation; and (v) the possibility of future timidity by government
employees who will be forced to recognize that their secrets are
violable.

Id. (quoting In re Franklin Nat'l Bank Sec. Litig., 478 F. Supp. 577, 583 (E.D.N.Y. 1979)

(internal citations removed)).

Plaintiffs argue that PAWs are neither predecisional nor deliberative.  [ECF No. 91 at 11–

12].  First, Plaintiffs assert that, according to the HAB Manual, officers render decisions rather

than make recommendations and, as such, the PAWs are not predecisional but "state or explain a

decision the Government has already made."  [Id. (quoting In re Pharm., 254 F.R.D. at 40)].

Second, regardless of whether an officer's decision requires final sign-off, the agency ultimately

adopts the officer's reasoning, meaning the PAWs become the agency's final decision and are

therefore no longer deliberative.  [Reply at 9–10].  The Court disagrees.

The HAB Manual is clear that supervisory review is "not intended to be a re-adjudication

of the officer's decision" and that supervisors "should generally defer" to the officer.  [HAB

Manual at USCIS-0099, -0100].  Further, the administrative record indicates that once officers

have documented their reasoning in the PAWs, they upload the decision notice onto the internal

management system, at which point the case is forwarded to the supervisor.  See [ALIMA Doe-

618; see also HAB Manual at USCIS-0093–99].  Although this gives officers significant

responsibilities in the decision-making process, the HAB Manual also expressly states that all

decisions are "subject to 100% supervisory review."  [HAB Manual at USCIS-0099, -0100; id. at

USCIS-0063 (section entitled "100% Supervisory Reviews" provides that a supervisor "reviews

and signs off on every case."); see also id. at USCIS-0099 ("All decisions . . . issued by an

officer are subject to 100% supervisory review."); see also AAZAR-Doe 620 (the PAWs specify

that "[f]irst-line supervisory review is required for all parole cases.")].  In fact, the HAB Manual

specifies that only "[a]fter the supervisor has signed the decision, . . . approvals and denials are submitted to administrative staff in order to mail out notifications of the decision and to complete post-adjudication processing."  [HAB Manual at USCIS-0134].  This suggests to the Court that PAWs "precede[], in temporal sequence, the 'decision' to which [they] relate[]."  Abtew v. U.S. Dep't of Homeland Sec., 808 F.3d 895, 898–99 (D.C. Cir. 2015) (quoting Senate of the Commonwealth of P.R. v. Dep't of Just., 823 F.2d 574, 585 (D.C. Cir. 1987)).

Further, the HAB Manual contemplates scenarios where an officer's decision may be legally sound,[6] but the supervisor nonetheless believes that the "case should be decided differently."  [HAB Manual at USCIS-0100].  In such cases, the supervisor "may discuss the case with the officer" or even with the branch chief.  [Id.].  Thus, although the HAB Manual refers to "decisions," the PAWs may be more in the nature of "recommendations," suggesting that the PAWs are deliberative.  See Abtew, 808 F.3d at 898–99.  ("A document is deliberative if it is 'a part of the agency give-and-take—of the deliberative process—by which the decision itself is made." (quoting Vaughn v. Rosen, 523 F.2d 1136, 1144 (D.C. Cir. 1975)).  The Court infers from this evidence that supervisors are not merely rubber-stamping the officers' decisions, but rather remain "free to change their minds," and is therefore satisfied that the PAWs are deliberative.  Renegotiation Bd., 421 U.S. at 189–90, 190 n.26.

The Court is also not persuaded by Plaintiffs' second argument, namely that the PAWs "bec[o]me the agency's formal decision upon supervisor review and approval" and are then stripped of any privilege protection.  [ECF No. 91 at 12–13].  "To adopt a deliberative document, it is not enough for an agency to make vague or equivocal statements implying that a position

_____

[6] When reviewing a decision, the supervisor must ensure that it is "legally sufficient, consistent with agency policy and guidance, and is based on evidence in the record."  [HAB Manual at USCIS-0099].

presented in a deliberative document has merit; instead, the agency must make an 'express[ ]' choice to use a deliberative document as a source of agency guidance." Jud. Watch Inc. v. U.S. Dep't of Def., 847 F.3d 735, 739 (D.C. Cir. 2017) (quoting Sears, 421 U.S. at 161); Sluss v. U.S. Dep't of Just., 17-cv-00064, 2019 WL 2493447, at *4 (D.D.C. June 14, 2019).

Pursuant to the HAB Manual, once a supervisor has reviewed an officer's decision and concurs with the outcome, the supervisor "dates and signs the [PAW], signs the decision notices, initials and dates the Case File Coversheet, and updates [the case management system]."  [HAB Manual at USCIS-0100].  As one partially unredacted PAW reveals, the worksheet has two check boxes, allowing a supervisor to either "concur" or "disagree" "with the decision."  [ECF No. 92-5 at 2].  If the supervisor concurs, they need not provide any further explanation.[7]  See [id.].

Approval alone, however, does not transform a deliberative document into an agency's formal decision.  Rather, the agency must accept the document's reasoning.  Sluss, 2019 WL 2493447, at *4 (The "agency must accept the document's reasoning, not merely its conclusions" (citing Elec. Frontier Found. v. U.S. Dep't of Just., 739 F.3d 1, 10–11 (D.C. Cir. 2014))).  A supervisor's concurrence, without more, does therefore not denote the adoption of a worksheet's underlying reasoning.  See Machado Amadis v. U.S. Dep't of State, 971 F.3d 364, 370 (D.C. Cir. 2020) (finding that "a recommendation does not lose its predecisional or deliberative character simply because a final decisionmaker later follows or rejects it without comment."); see also Abtew, 808 F.3d at 899 (a supervisor's initialing of a memorandum "may suggest approval of the memo's bottom-line recommendation, but it would be wrong and misleading to think that initialing necessarily indicates adoption or approval of all of the memo's reasoning.").

---

[7] If the supervisor disagrees with the decision, an explanation is required.  [ECF No. 92-5 at 2].

Assuming, arguendo, that the PAWs are protected by the deliberative process privilege, that privilege may be struck if the need for disclosure outweighs Defendant's interest in non-disclosure. The Court therefore turns to the balancing test outlined in In re Pharm to assess whether disclosure of the PAWs is warranted. 254 F.R.D. at 40.[8]

Here, neither party appears to dispute the central role of USCIS in the litigation (fourth factor) or the seriousness of the issue before the Court (third factor), both of which favor disclosure. See [ECF No. 91 at 14]; see generally [Opp'n, Reply]. As to the first factor, the relevance of the evidence contained in the PAWs, the Court similarly finds that it favors disclosure. The gravamen of the dispute between the parties is whether USCIS implemented a new policy through its November 2021 Guidance which, Plaintiffs allege, endorsed the categorical denial of HP applications from Afghan-based beneficiaries. See generally [ECF Nos. 102, 117, 120]. The extent to which lack of consular processing factored into the officers' decision-making (if at all) in denying Plaintiffs' HP requests may therefore assist the Court's assessment of whether such a policy existed.

As to the "availability of other evidence," Defendants argue that the existing administrative record is "sufficient for the Court to resolve the case." [Opp'n at 17]. Plaintiffs do not dispute that there is "other evidence in the administrative record that USCIS in fact changed its policy towards Afghan [HP] applicants," but argue that the "adjudicators'

---

[8] For convenience, those factors, again, are:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

In re Pharm., 254 F.R.D. at 40.

explanations may well provide vital information about how the agency put that policy change into practice."  [ECF No. 91 at 14].

The Court recognizes that the administrative record includes some documents relevant to the purported change in policy,[9] but also notes the limited number of documents pertaining to the November 2021 Guidance.  Additional information, assuming that it exists, about how the November 2021 Guidance was put into practice would facilitate the Court's assessment of whether there was a categorical denial of Afghan-based HP applications.  The Court recognizes that the review of a limited number of PAWs may not be conclusive, but it is also unlikely to obtain such relevant information from other sources.  Cf. Stamps v. Town of Framingham, 38 F. Supp. 3d 134, 141 (D. Mass. 2014) (noting that the information in the documents in question "can be obtained from other sources.").  This factor therefore tilts in favor of disclosure.

The fifth factor demands that the Court consider the "possibility of future timidity by government employees who will be forced to recognize that their secrets are violable."  In re Pharm., 254 F.R.D. at 40.  The Court agrees with Defendants that the government has a strong "institutional interest in maintaining the candid nature of the deliberations," [Opp'n at 17], so as to avoid a chilling effect that could ultimately impact the "quality of agency decisions," Sears, 421 U.S. at 150–51.

---

[9] See, e.g., [USCIS-0715–22 (email correspondences, including attachment of a document entitled "BIRD/HAB Request for Guidance on Afghan Parole Applications" between IRAD's Chief Joanna Ruppel ("Ruppel") and HAB Chief John W. Bird, among others, with the subject line "parole requests for Afghan nationals"); USCIS-0952–53 (email from Ruppel to various USCIS employees dated October 26, 2021, with the subject line "Afghan parole cases – decisions"); USCIS-0956–57 (email from Ruppel to, among others, USCIS Director Ur Jaddou, dated October 15, 2021 with the subject line "Afghan parole updates"); USCIS-0656–64 (email correspondence, including, among others, Ruppel, between October 29, 2021 and November 2, 2021 with the subject line "Clearance Priorities – Friday, October 29, 2021")].

Despite this, the Court finds that the balance of factors here outweighs non-disclosure. See Citizens Union of City of N.Y. v. Att'y Gen. of N.Y., 269 F. Supp. 3d 124, 167 (S.D.N.Y. 2017) ("'[I]f consideration of the first four factors leads to the conclusion that they outweigh the risk addressed by the fifth—possible future timidity—then the demanded document ought to be disclosed,' despite the claim of privilege." (quoting Favors v. Cuomo, No. 11-cv-05632, 2013 WL 11319831, at *11 (E.D.N.Y. Feb. 8, 2013))).  The Court is satisfied that excluding the PAWs from the public record by appropriately designating the materials pursuant to the Parties' Protective Order, [ECF No. 76], or any other measures the parties propose, will adequately mitigate any chilling effect.  Fairholme Funds, Inc. v. United States, 128 Fed. Cl. 410, 442 (2016) ("[I]t is highly unlikely, given the protective order that is already in place in this case, that any type of disclosure would result in a chilling of frank policy discussions between government employees.").

Accordingly, the Court orders Defendants to provide the unredacted PAWs of the Individual Plaintiffs' HP applications within 14 days of this Order.

**B.  Other Documents Alleged to be Missing from the Record**

This case no doubt presents a conundrum.  Plaintiffs contend that the administrative record is incomplete because very few documents "reflect[] the decision-making process behind the November [2021] Guidance," [ECF No. 91 at 15].  Defendants counter that there is a lack of documents precisely because the November 2021 Guidance marked no change in policy.  [Opp'n at 18–19].  Defendants further insist that because administrative records are entitled to a presumption of regularity, the Court must rely on the record presented.  [Id. at 7].

An administrative record must consist of "all documents and materials directly or indirectly considered by [the] agency decision-makers and includes evidence contrary to the

agency's position." Town of Norfolk v. U.S. Army Corps of Eng'rs, 137 F.R.D. 183, 185 (D.

Mass. 1991.) aff'd, 968 F.2d 1438 (1st Cir. 1992); Save the Colo. v. U.S. Dep't of the Interior,

517 F. Supp. 3d 890, 895 (D. Ariz. 2021); Amgen Inc. v. Hargan, 285 F. Supp. 3d 397, 404

(D.D.C. 2017) (internal citations omitted).  Further, an agency's "designation of the

Administrative Record, like any established administrative procedure, is entitled to a

presumption of administrative regularity.'" Oceana, Inc. v. Ross, 920 F.3d at 865 (citing Bar

MK Ranches, 994 F.2d at 740).

As far as the Court is aware, and neither party indicates otherwise, the First Circuit has

not articulated the standard a party must meet to rebut the presumption of regularity when

seeking completion of an administrative record.  See [Opp'n at 8 (citing to the District of South

Carolina when defining the standard to overcome the presumption of regularity)]; see also

Housatonic River Initiative, 75 F.4th at 278–79 (1st Cir. 2023) (considering motion to

supplement administrative record); Town of Winthrop, 535 F.3d at 14–15 (same); Town of

Norfolk, 968 F.2d at 1459–60 (same).[10]

In the absence of such authority from the First Circuit, the Court adopts the standards

applied in other circuits, which generally require "clear evidence" that the record is incomplete.

S.C. Coastal, 611 F. Supp. 3d at 142.  That is, a party must do more than simply allege that the

---

[10] There appears to be, moreover, "'some confusion' about the showing a party must make to justify a court order to complete the administrative record." Oceana, Inc. v. Pritzker, 217 F. Supp. 3d 310, 317 n.7 (D.D.C. 2016), aff'd sub nom., Oceana, Inc. v. Ross, 920 F.3d 855 (D.C. Cir. 2019) (referring to the confusion in the D.C. Circuit) (quoting Univ. of Colo. Health at Mem'l Hosp. v. Burwell, 151 F. Supp. 3d 1, 13 (D.D.C. 2015) on reconsideration, 164 F.Supp.3d 56 (D.D.C. 2016)) (citation omitted) (remarking that "supplement" has been used synonymously to refer to "both a circumstance in which a party argues that the administrative record does not actually reflect the materials that the agency had before it when it made its decision [that is, completion], and a circumstance in which a party seeks to add extra-record or extra-judicial information to the record [that is, supplementation]").

record is incomplete. They must provide "reasonable, non-speculative grounds to believe that materials considered in the decision-making process are not included in the record," Exxon Mobil Corp. v. Mnuchin, No. 17-cv-01930, 2018 WL 10396585, at *2 (N.D. Tex. June 26, 2018), objections overruled, No. 17-cv-01930, 2018 WL 4103724 (N.D. Tex. Aug. 29, 2018) (internal citation omitted), and identify the pertinent omitted materials "with sufficient specificity, as opposed to merely proffering broad categories of documents and data that are 'likely' to exist as a result of other documents that are included in the administrative record," S.C. Coastal, 611 F. Supp. 3d at 142 (citations omitted); Oceana, Inc. v. Pritzker, 217 F. Supp. 3d at 316–17 (D.D.C. 2016), aff'd sub nom., Oceana, Inc. v. Ross, 920 F.3d 855 (D.C. Cir. 2019) (internal citations omitted); see also Ctr. For Food Safety v. Perdue, No. 20-cv-00256, 2021 WL 8532247 (N.D. Cal. Nov. 5, 2021) ("[P]laintiffs may overcome the presumption [of regularity] by identifying reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record" (citation omitted) (second alteration in original)); Wildearth Guardians v. U.S. Forest Serv., 713 F. Supp. 2d 1243, 1253 (D. Colo. 2010) (Plaintiff must show "by clear evidence that the record fails to include documents or materials considered by [Defendants] in reaching the challenged decision."); Pacific Shores Subdiv. Cal. Water Dist. v. U.S. Army Corps. Of Eng'rs, 448 F. Supp. 2d 1, 6 (D.D.C. 2006) (Plaintiff "must identify reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record.").

Here, the Court ordered Defendants to produce "the complete, certified administrative record" as relevant "to changes in the standards applied to applications from Afghan nationals remaining in Afghanistan." [ECF No. 69 at 38]. The Court observes that the certification record does not confirm that the documents produced represent the "complete record" or all materials

"directly or indirectly considered" by the agency.  See [ECF No. 79-24 at 2; ECF No. 85-1].
Instead, Defendants' designation references documents in the administrative record that "relate"
to the purported policy change.  [ECF No. 79-24 ¶ 4; ECF No. 85-1 ¶ 4].  Some courts have
found such an omission sufficient to rebut the presumption of regularity.  Compare Sharks Sports
& Entm't. LLC v. Fed. Transit Admin., No. 18-cv-04060, 2020 WL 511998, at *3 (N.D. Cal.
Jan. 31, 2020) (because the agency had limited the administrative record to documents "relied
on" rather than "all materials directly or indirectly considered," the presumption of regularity
was overcome); and Gill v. Dep't of Justice, No. 14-cv-03120, 2015 WL 9258075, at *6 (N.D.
Cal. Dec. 18, 2015) (certification that the agency "considered" the documents indicates non-
compliance with the administrative record standard that all materials considered, directly or
indirectly, must be included), with Save the Colo., 517 F. Supp. 3d at 899–900 (concluding that
questions of certification language were "semantical arguments" and agency designation that it
provided a "true, correct, and complete copy of the Administrative Record," was, without more,
insufficient to rebut the presumption of regularity); and Banner Health v. Sebelius, 945 F. Supp.
2d 1, 18 (D.D.C. 2013) (although agencies file "certifications with administrative records as a
matter of practice, certifications are not required by the APA or any other law."), vacated in part
on other grounds, No. 10-cv-01638, 2013 WL 11241368 (D.D.C. July 30, 2013).

Although such an omission would not ordinarily persuade the Court that there are
reasonable, nonspeculative grounds for believing that the record is incomplete, the Court here
finds that Plaintiffs do not "merely proffer[] broad categories of documents" they believe likely
exist, but rather, after carefully parsing through the record, identify specific gaps in the record.
S.C. Coastal, 611 F. Supp. 3d at 142 (citations omitted); see [ECF No. 91 at 14–17; ECF No. 92-
1].  In fact, Plaintiffs have already identified documents that were omitted from the initial

administrative record and appear directly relevant to the issues and time period before this Court, including: (1) an eight-page document with historical statistics about approval rates (USCIS-0732-39) and (2) a document entitled "Ruppel Talking Points for Parole Stakeholder Event EXA 11.5.21 FINAL DS EV edits.docx" (USCIS-0768-85), seemingly drafted around the time of the release of the November 2021 Guidance.[11]  [ECF No. 92-2 at 5–6; ECF No. 85-1 ¶ 5].

Further, the Court once again observes that a very limited number of documents pertaining to the decision-making process as distinct from the decisions themselves have been produced, which raises the possibility that there are other relevant documents that have not been produced.  For example, with regard to USCIS' decision to pause adjudication, the administrative record appears to primarily contain documents relaying the decision to pause adjudications in September but not documents that reflect how the decision was made.  [ECF No. 91 at 17 n.10; see also [ECF No. 141 at 9–11].  Similarly, out of more than 1,000 pages in the record, only a limited number provide any insight into the decision-making process surrounding the adoption of the November 2021 Guidance.  [ECF No. 91 at 15; ECF No. 141 at 10–15].

That said, the Court also acknowledges Defendants' position that the November 2021 Guidance does not amount to a policy.  See [Opp'n at 9–12, 18–19].  Defendants explain that because no "categorical denial policy ever existed, in order to meet the Court's order, [they] produced a general record 'detail[ing] the USCIS internal procedures for adjudicating requests for parole for urgent humanitarian reasons.'"  [Id. at 18 (emphasis added) (quoting ECF No. 85-1 ¶ 4)].  Although this may well be the case, it is the Court's task to determine, on the merits,

---

[11] These documents were referenced as attachments in email correspondence.  [ECF No. 92-2 at 5–6].

whether a policy existed, and to do so it must have the full record—that is "all documents and materials directly or indirectly considered by [USCIS]"— before it.  See Bar MK Ranches, 994 F.2d at 739 (an agency "may not unilaterally determine what constitutes" the administrative record); see also Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 419 (1971) (internal citations omitted) (the basis for reviewing an agency action is the "'whole record' compiled by the agency").

For these reasons, the Court orders Defendants to revisit their compilation of the administrative record and confirm, within 30 days of this Order, that it includes all documents and materials, directly or indirectly, considered by the agency relevant "to changes in the standards applied to applications from Afghan nationals remaining in Afghanistan and the pace of adjudications of Afghan humanitarian parole applications."  [ECF No. 69 at 38].  This encompasses all documents and materials directly or indirectly considered by the agency in formulating the November 2021 Guidance.

## C.  Privilege Log of Withheld Documents

Plaintiffs further argue that Defendants have "failed to produce documents in their entirety without providing any privilege log to substantiate or even attempt to justify their withholding."  [ECF No. 91 at 17].  Defendants respond that they "are not required to log documents that are outside the [administrative record]."[12]  [ECF No. 94 at 20].

Because privileged materials are ordinarily not part of the administrative record, see Town of Norfolk, 968 F.2d at 1458, some courts have concluded that they "do not need to be logged as withheld from the administrative record."  Oceana, 920 F.3d at 865 (citing Oceana,

---

[12] Defendants provided a privilege log for produced documents containing redactions.  See [ECF No. 92-2; ECF No. 94-1].

Inc. v. Locke, 634 F.Supp.2d 49, 52 (D.D.C. 2009), rev'd on other grounds, 670 F.3d 1238 (D.C.

Cir. 2011)); see also Great Am. Ins. Co. v. United States, No. 12-cv-09718, 2013 WL 4506929

(N.D. Ill. Aug. 23, 2013) ("[R]equiring [defendant] to identify and describe on a privilege log all

of the deliberative documents would invite speculation into an agency's predecisional process

and potentially undermine the limited nature of review available under the APA."); Tafas v.

Dudas, 530 F. Supp. 2d 786, 794 (E.D. Va. 2008) ("A complete administrative record . . . does

not include privileged materials, such as documents that fall within the deliberative process

privilege, attorney-client privilege, and work product privilege.").  In Oceana, the D.C. Circuit

affirmed the district court's decision to deny plaintiff's request that the agency prepare a

privilege log, explaining that:

> [O]n arbitrary and capricious review, absent a showing of bad faith
> or improper behavior, "[a]gency deliberations not part of the
> record are deemed immaterial." In re Subpoena Duces Tecum, 156
> F.3d 1279, 1279[–]1280 (D.C. Cir. 1998).  Because predecisional
> documents are "immaterial," they are not "discoverable." Fed. R.
> Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any
> nonprivileged matter that is relevant to any party's claims or
> defense . . . ." (emphasis added)).  A privilege log is required only
> when "a party withholds information otherwise discoverable by
> claiming that the information is privileged," Fed. R. Civ. P.
> 26(b)(5), and since predecisional documents are irrelevant and
> therefore not "otherwise discoverable," they are not required to be
> placed on a privilege log.

920 F.3d at 865 (emphasis added).  Other Circuits have followed suit.  See, e.g., Blue Mountains

Biodiversity Project v. Jeffries, 99 F.4th 438, 444 (9th Cir. 2024) (absent a showing of

impropriety or bad faith, deliberative materials are generally not part of the administrative

record).

    In contrast, in unpublished decisions and orders, the Second and Fourth Circuits have

required agencies to provide privilege logs.  See, e.g., In re Nielsen, No. 17-cv-03345, 2017 U.S.

App. LEXIS 26821, *8–9 (denying agency's mandamus petition to lift district court's order to produce a privilege log for materials withheld from the administrative record); Defs. of Wildlife v. Dep't of the Interior, No. 18-cv-02090 (4th Cir. Feb. 5, 2019) (ordering the government submit a privilege log "in the event [it] withholds any documents under the guise of the deliberative process privilege (or any other privilege)"); see also Save the Colo. v. Spellmon, No. 18-cv-03258, 2023 WL 2402923, at *4 (D. Colo. Mar. 7, 2023) (observing that other than the D.C. Circuit no other circuit court "has addressed the issue in a published opinion").

District courts are similarly split on the issue, though courts have observed a "growing consensus . . . that agencies must submit a [privilege] log if they withhold privileged materials from" the administrative record.  Save the Colo., 2023 WL 2402923, at *4 (collecting cases); Sierra Club v. U.S. Army Corps of Eng'rs, No. 20-cv-00396, 2022 WL 2953075, at *3 (D. Me. July 26, 2022), rev'd on review, 2023 WL 6260728 (D. Me. Sept. 26, 2023).  Unlike the D.C. Circuit, these courts reason that deliberative materials are necessarily included in the administrative record, as it consists of "all documents and materials directly or indirectly considered by agency decision-makers."  Ksanka Kupaqa Xa'lcin v. U.S. Fish & Wildlife Serv., No. CV 19-20-M-DWM, 2020 WL 4193110, at *2 (D. Mont. Mar. 9, 2020).  Thus, under this rubric, when courts review "the whole record" to determine whether an agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action," they should have "a role in adjudicating whether particular documents were properly withheld."  State v. U.S. Immigr. & Customs Enf't, 438 F. Supp. 3d 216, 218 (S.D.N.Y. 2020) (alterations in original) (first quoting Overton Park, 401 U.S. at 419; and then quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)).  This approach gives courts some ability to assess whether the administrative record is complete and allows them to undertake "judicial review in

19

the exacting manner prescribed by . . . <u>Overton Park</u> and <u>State Farm</u>."  <u>Id.</u> (citing <u>In re United</u>

<u>States</u>, 138 S. Ct. 371, 372 (Mem.) (2017) (Breyer, J., dissenting) ("Indeed, judicial review

cannot function if the agency is permitted to decide unilaterally what documents it submits to the

reviewing court as the administrative record."); <u>see also</u> <u>Exxon Mobil Corp.</u>, 2018 WL

10396585, at *4 ("Without a log, Plaintiffs would have no way of knowing what materials were

withheld, whether they are relevant, or whether they contain information available from another

source.").[13]

 Although documents within the deliberative process privilege are not ordinarily

considered part of the administrative record, <u>Town of Norfolk</u>, 968 F.2d at 1458–60, the First

Circuit, as far as this Court is aware, has yet to address under what circumstances an agency may

be compelled to produce a privilege log, <u>see</u> <u>Sierra Club v. U.S. Army Corps of Eng'rs</u>, No. 20-

cv-00396, 2023 WL 6260728, at *4 (D. Me. Sept. 26, 2023).  In the absence of authoritative

guidance, the Court is inclined to follow the rationale of the D.C. Circuit, which has explained

---

[13] That said, even Courts that view deliberative documents as part of the administrative record
appear to require a "preliminary showing of some significant irregularity" before compelling an
agency to produce a privilege log.  <u>Sierra Club v. U.S. Army Corps of Eng'rs</u>, 2023 WL
6260728, at *4, *7 (A "party challenging administrative action who seeks an order to compel the
expansion of the administrative record must come to the court with something more than a
fishing pole."); <u>see, e.g.</u>, <u>Clinch Coal. v. U.S. Forest Serv.</u>, 597 F. Supp. 3d 916, 922 (W.D. Va.
2022) (because defendants expressly relied on documents not part of the administrative record,
plaintiffs had made a "substantial showing" that the record was incomplete, warranting, among
other things, a privilege log); <u>Bartell Ranch LLC v. McCullough</u>, No. 3:21-cv-00080, 2021 WL
6118738, at *3 (D. Nev. Dec. 27, 2021) (defendants compelled to produce a privilege log
because they had admitted that deliberative materials were omitted from the administrative
record); <u>Exxon Mobil Corp.</u>, 2018 WL 10396585, at *3–4 (a privilege log was necessary because
defendants' certification of the record stated that they included only the "non-privileged
documents considered, directly or indirectly" and plaintiffs therefore had established a
"reasonable and non-speculative grounds" that the record was incomplete); <u>Pitman v. U.S.</u>
<u>Citizenship & Immigr. Servs.</u>, No. 17-cv-00166, 2018 WL 3232355, at *3 (D. Utah July 2, 2018)
(Defendants' certified administrative record consisted of documents "actually considered" rather
than "directly or indirectly considered").

that because predecisional and deliberative documents are not part of the administrative record,

they are deemed immaterial and therefore not discoverable.  Oceana, Inc. v. Ross, 920 F.3d at

865 (citing Oceana, Inc. v. Locke, 634 F. Supp. 2d at 52).  Given that privilege logs are only

required when "a party withholds information otherwise discoverable by claiming that the

information is privileged" and since predecisional and deliberative documents are by their nature

not discoverable under the APA, "they are not required to be placed on a privilege log."  Id.

(quoting Fed. R. Civ. P. 26(b)(5)).

Here, Plaintiffs appear to primarily point to two sets of documents, discussed supra, that

were initially withheld from the record.  [ECF No. 91 at 18–19; ECF Nos. 92-1, 92-2].

Defendants have since cured that omission.  [ECF No. 94-1].  That alone, in the Court's view,

does not rise to a showing of bad faith or improper behavior, and the Court therefore detects no

material irregularity sufficient to warrant the production of a privilege log for documents

withheld.  Oceana, 920 F.3d at 865.

## D.    Discovery

Finally, Plaintiffs further urge the Court to allow targeted discovery into (i) "how

Defendants compiled the administrative record" and (ii) "whether the delay in adjudicating

Plaintiffs' applications was reasonable" (Count IV).  [ECF No. 91 at 19, 23].  Defendants

respond that Plaintiffs have no legal basis for seeking discovery, as Defendants produced "what

the Court asked for," and considering that all Plaintiffs received a decision on their HP

applications, any claims related to the delay in the adjudication of applications have become

moot.  [Opp'n at 21, 23–24].

In certain circumstances, "[w]hen a showing is made that the record may not be

complete, limited discovery is appropriate to resolve that question."  Bar MK Ranches, 994 F.2d

at 740; see also Bos. Redevelopment Auth. v. Nat'l Park Serv., 838 F.3d 42, 48 (1st Cir. 2016)

(additional discovery "may on rare occasions be proper in an APA case where . . . the

complaining party has insinuated either that the agency acted in bad faith or that the

administrative record is incomplete").  The Court, however, is not aware, and Plaintiffs do not

provide any case law to the contrary, that such limited discovery extends "into how Defendants

compiled the administrative record."  [ECF No. 91 at 19 (emphasis added)].  Such a request

strikes the Court as an effort to supplement rather than complement the administrative record,

and, accordingly, a showing of "bad faith" or "improper behavior" is required.  See Int'l Junior

Coll. of Bus. & Tech., Inc., 802 F.3d at 114 (courts generally do not "allow supplementation of

the administrative record without specific evidence (i.e. a 'strong showing') of the agency's 'bad

faith or improper behavior.'" (quoting Town of Norfolk, 968 F.2d at 1458–59)).  Here, because

the Court does not see a basis for finding bad faith or improper behavior, Plaintiffs' motion for

targeted discovery as to how Defendants compiled the administrative record is denied.

Plaintiffs further seek to supplement the administrative record through targeted discovery

on their undue delay and mandamus claims.  [ECF No. 91 at 21–23].  Defendants reply that

because "all Plaintiffs received decisions," discovery into the delay claims are moot.  [Opp'n at

23].[14]

A showing of mootness is a "heavy burden."  Bos. Bit Labs, Inc. v. Baker, 11 F.4th 3, 8

(1st Cir. 2021) (internal quotation marks removed).  Given that the Moe and Boe families and

Permaz Doe continue to have cases pending before USCIS, [Reply at 13–14], and that the Noe

families' petitions are closely tied to a determination about whether the November 2021

---

[14] On June 28, 2024, Plaintiffs moved to dismiss Amir Doe, Afsoon Doe, Aazar Doe, Afshaneh
Doe, Ali Doe, Alima Doe, Abdul Doe, and Diana Doe from this action.  [ECF No. 132 at 1].
The only remaining Plaintiff from the Doe family is Permaz Doe.  See [Id.]

Guidance categorically denied the approval of Afghan-based HP beneficiaries, see [ECF No. 141], the Court, at this juncture, is not satisfied that "[it] cannot give any effectual relief to the potentially prevailing party," Am. C.L. Union of Mass. v. U.S. Conference of Catholic Bishops, 705 F.3d 44, 52 (1st Cir. 2013) (internal citations and quotation marks omitted). A finding of mootness would therefore be premature.

As to Plaintiffs' request for targeted discovery on the undue delay and mandamus claims,[15] courts may consider extra-record evidence "where agencies are sued [under § 706(1)] for a failure to take action." Democracy Forward Found. v. Pompeo, 474 F. Supp. 3d 138, 148 (D.D.C. 2020) (alteration in original) (citing Esch v. Yeutter, 876 F.2d 976, 991, 991 n.166 (D.C. Cir. 1989)). This is because judicial review cannot be "limited to the record as it existed at any single point in time, [as] there is no final agency action to demarcate the limits of the record." Nat'l Law Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affairs, 842 F. Supp. 2d 127, 130–31 (D.D.C. 2012) (quoting Friends of the Clearwater v. Dombeck, 222 F.3d 552, 560 (9th Cir. 2000)).[16]

The Court instructed Defendants to produce the complete, certified administrative record on Plaintiffs' remaining claims, including "the pace of adjudications of Afghan humanitarian parole applications." [ECF No. 69 at 38]. The certified administrative record omits confirmation that the record includes documents relating to the "pace of adjudications." See [ECF No. 85-1]. Accordingly, the Court orders Defendants to confirm, within 30 days of this Order, that the administrative record includes all documents and materials, directly or indirectly,

---

[15] Specifically, Plaintiffs seek "a small number of targeted interrogatories (no more than five to seven), requests for production of documents and things (no more than five), and a limited designee deposition of no more than five hours on the record." [ECF No. 91 at 23].
[16] The Court observes that there is limited guidance on this issue in the First Circuit.

considered by the agency relevant to "the pace of adjudications of Afghan humanitarian parole applications." [ECF No. 69 at 38]. If Defendants confirm that the existing record includes all such materials and documents, the Court will deny Plaintiffs' request for targeted discovery.

## IV.    CONCLUSION

Accordingly, Plaintiffs' motion, [ECF No. 90], is <u>GRANTED</u> in part and <u>DENIED</u> in part. Specifically, the Court orders Defendants to:

- Provide the unredacted PAWs of the Individual Plaintiffs' humanitarian parole applications within <u>14 days</u> of this Order; and

- Confirm that the corrected administrative record includes all documents and materials directly or indirectly considered by the agency relevant "to changes in the standards applied to applications from Afghan nationals remaining in Afghanistan and the pace of adjudications of Afghan humanitarian parole applications" within <u>30 days</u> of this Order.

**SO ORDERED.**

October 2, 2024                                          /s/ Allison D. Burroughs
                                                         ALLISON D. BURROUGHS
                                                         U.S. DISTRICT JUDGE